**E.Z. GAS, INC., d/b/a Petrolane Gas Service, Appellant (Third Party Plaintiff Below),**

v.

**HYDROCARBON TRANSPORTATION, INC., Dome Pipeline Corporation, Continental Oil Company, and Mobile [sic] Oil Company, Appellees (Third Party Defendants Below),**

**and**

**Milton Miller, Personal Representative of the Estate of Henry Miller and Ella J. Miller, Deceased, Appellees (Plaintiff Below),**

**and**

**Emerson Electric Co., A.O. Smith Corporation, Barker Analytical Laboratories, Inc., and United Farm Bureau Insurance, Appellees (Defendants Below).**

No. 3–184 A 2.

Court of Appeals of Indiana, Third District.

Nov. 26, 1984.

Thomas R. Lemon, James S. Butts, Rasor, Harris, Lemon & Reed, Warsaw, for appellant.

Leon R. Kaminski, Newby, Lewis, Kaminski & Jones, LaPorte, for appellee Continental Oil Co.

John E. Doran, Doran, Manion, Boynton, Kamm & Esmont, South Bend, for appellee Dome Pipeline Corp.

Roland Obenchain, Jones, Obenchain, Johnson, Ford, Pankow & Lewis, South Bend, for appellee Hydrocarbon Transp., Inc.

R. Kent Rowe, R. Kent Rowe III, Rowe & Laderer, South Bend, for appellee Mobil Oil Co.

STATON, Presiding Judge.

Petrolane Gas Service was one of several defendants named in a suit for damages by the estate of Henry and Ella Miller who died of injuries received in an explosion related to a gas water heater in their home. Petrolane, the distributor of the liquid propane gas used in the Miller home, filed a Third Party Complaint for Indemnification against Hydrocarbon Transportation, Inc., Dome Pipeline Corporation, Continental Oil Company, and Mobil Oil Company (Suppliers), who supplied the L.P. gas to Petrolane. It is from the trial court's grant of the Suppliers' motions for summary judgment that Petrolane now appeals.

The sole issue on appeal is whether the trial court erred in determining that there was no genuine issue of material fact and that the Suppliers were entitled to summary judgment as a matter of law.

Reversed.

The estate's claim against Petrolane, sounding in negligence, strict liability, and breach of implied warranties, was that the L.P. gas supplied to the Miller home by Petrolane contained an inadequate odorant

to warn the Millers of its presence in the basement of the Miller residence. When Mr. Miller attempted to light the pilot on the allegedly faulty water heater he touched off an explosion of gas which apparently had escaped and accumulated due to the defect in the heater.

In its indemnification action Petrolane claims that it received the L.P. gas from its suppliers who are responsible for odorizing the gas before transferring it to Petrolane. Therefore any defect or insufficiency in the odorant would be due to the fault of the suppliers.

The purpose of summary judgment proceedings is to terminate litigation when no factual dispute exists and when the case may be determined as a matter of law. *Vanco v. Sportsmax, Inc.* (1983), Ind. App. 448 N.E.2d 1198, 1200. The trial court must exercise caution to ensure a party of his right to a fair determination of genuine issues. *Ogilvie v. Steele* (1983), Ind.App., 452 N.E.2d 167, 169. The burden is on the proponent of summary judgment to negate the existence of any genuine issue of material fact and all doubts must be resolved against the proponent. *Kahf v. Charleston South Apartments,* (1984), Ind.App., 461 N.E.2d 723, 729. The court must consider as true the facts set forth in the non-movant's affidavits and liberally construe discovery in his favor. *Connell v. American Underwriters, Inc.* (1983), Ind. App., 453 N.E.2d 1028, 1029. To be considered genuine for summary judgment purposes, a material issue of fact must be established by sufficient evidence supporting the claimed factual dispute to require

the trier to resolve the parties' differing versions of the truth at trial. *Midwest Natural Gas Corp. v. Locke Stove Co.* (1982), Ind.App. 435 N.E.2d 85, 87.

In their Motions for Summary Judgment, the Suppliers relied upon the pleadings, depositions, and answers to interrogatories already on file to discharge their burden of negating the existence of any genuine issue of material fact. The Suppliers filed no supporting affidavits with their motions. Between Petrolane and the Suppliers there is no dispute as to the fact that the L.P. gas had been odorized before delivery to Petrolane. Delivery tickets and highway transportation receipts for every shipment of gas from Suppliers to Petrolane during the sixty (60) days immediately preceding Petrolane's delivery to the Millers show that odorant was injected into each shipment of gas by each of the Suppliers at rates in conformance with or in excess of established industry standards.[1] The undisputed fact upon which the Suppliers base all arguments, however is the fact that Petrolane pumped the gas as it was received from the Suppliers into two thirty thousand (30,000) gallon, interconnected, self-balancing storage tanks. This fact, they argue, constitutes a substantial change in the gas product which bars any liability of the Suppliers to indemnify Petrolane for a defective odorant level. Because Petrolane mixed the gas of all suppliers in a common tank, the argument runs, each individual supplier's product and any variation in odorant level was inalterably commingled with the product of each of the

1. "13. LP–GAS ODORIZATION
130. LP–GAS to be Odorized
1300. All LP-Gases shall be odorized by the addition of a warning agent of such character that they are detectable, by a distinct odor, down to a concentration in air of not over one-fifth the lower limit of flammability.[1,2] Odorization, however, is not required if harmful in the use or further processing of the LP-Gas, or if odorization will serve no useful purpose as a warning agent in such further use or processing.
 1. It is recognized that no odorant will be completely effective as a warning agent in every circumstance.

2. It is recommended that odorants be qualified as to compliance with 1300 by tests or experience. Where qualifying is by tests, such tests should be certified to by a nationally recognized laboratory not associated with the odorant manufacturer. Experience has shown that ethly mercaptan and thiophane (tetrahycrothiophene), in the ratio of 1.0 pound of odorant per 10,000 gallons of liquid LP-Gas, have been recognized as effective odorants. Other odorants and quantities meeting the provisions of 1300 may be used."

other suppliers creating a different product, i.e., substantially changed, which could no longer be identified to any single supplier. This argument is a misapplication of the substantial alteration doctrine, asserting a legal conclusion as to what constitutes a substantial change such as would bar Petrolane's right to indemnity, as well as a bootstrap attempt to negate the issue of proximate cause via circular reasoning.

▇ In the absence of an express contractual or statutory right to indemnity a party may bring an action for indemnification only if he is without fault. He must demonstrate that he is without actual negligence and in a products liability case must show there was no substantial change or alteration in the condition of the product between the date of his purchase and the date of his subsequent resale to a consumer. *Coca-Cola Bottling Co.—Goshen v. Vendo Co.* (1983), Ind.App., 455 N.E.2d 370, 373.

▇ The doctrine of strict liability for defective products is codified in Indiana at IC 34–4–20 A–1 *et seq.* (Burns Code Ed., 1984 Supp.) and states:

"(a) One who sells, leases, or otherwise puts into the stream of commerce any product in a defective condition unreasonably dangerous to any user or consumer or to his property is subject to liability for physical harm caused by that product to the user or consumer or to his property if that user or consumer is in the class of persons that the seller should reasonably foresee as being subject to the harm caused by the defective condition, and if:

(1) The seller is engaged in the business of selling such a product; and

(2) The product is expected to and does reach the user or consumer without substantial alteration in the condition in which it is sold by the person sought to be held liable under this chapter."

Thus, in order to claim indemnity from the Suppliers on a theory of strict liability Petrolane, at trial, would have the burden of establishing that no substantial change had occurred in the gas product before it reached the ultimate consumers, the Millers. *Coca-Cola Bottling Co.-Goshen, supra.* Substantial change has been defined by this Court as

"*any* change which increases the likelihood of a malfunction, which is the proximate cause of the harm complained of, and which is independent of the expected and intended use to which the product is put." (Original emphasis.)

*Cornette v. Searjeant Metal Products, Inc.,* (1970), 147 Ind.App. 46, 258 N.E.2d 652, 657. For summary judgment to have been proper on this theory the trial court was required to consider the pleadings, depositions, answers to interrogatories and affidavits on file in the light most favorable to Petrolane, the non-movant, *Connell, supra,* and find there was no genuine issue of material fact that commingling the shipments was a change which increased the likelihood of the gas being undetectable, that such change was the proximate cause of Miller lighting a match unaware of the presence of accumulated gas, and that the commingling was independent of the expected and intended use of the product. On the basis of the record, we do not think the trial court could justifiably make such a determination.

Construing the products of discovery in favor of Petrolane, we conclude that the Suppliers failed to negate the existence of an issue regarding substantial change. The affidavit of Robert A. Reid, Petrolane's expert, contains the following statements:

"6. The LP-gas sold and delivered to Petrolane by each supplier, being Hydrocarbon Transportation, Inc., Dome Pipeline Corporation, Continental Oil Company and Mobil Oil Company, during the 60-day period prior to June 9, 1979 and prior to the addition of the odorant, ethyl mercaptan, had essentially the same chemical and physical characteristics with some possible insignificant variations of the chemical composition.

&ast; &ast; &ast; &ast; &ast; &ast;

9. The LP-gas sold and delivered to Petrolane by the four companies after the addition of the odorant, ethyl mercaptan, had essentially the same chemical and physical characteristics with some possible insignificant variations of chemical composition.

10. That is is affiant's opinion that all LP-gas delivered to Petrolane is essentially a fungible commodity. When the LP-gas from one source is mixed with the LP-gas from another, whether at the pipeline terminal storage facilities or in the bulk storage tanks at Petrolane, the product becomes a true mixture or true "solution, and there are no significant physical or chemical changes. The malodorant, ethyl mercaptan, is simply a part of the mixture or solution and is distributed uniformly throughout the LP-gas mixture."

Fungible goods are goods in which any one unit is treated as identical to any other unit, (Black's Law Dictionary (5th Ed.) p. 607), thus by definition, the mere commingling of fungible goods cannot by itself constitute a substantial change. Nothing offered by the Suppliers and nothing found in the record contradicts Reid's testimony or suggests that the commingling process could in any way affect the odorant levels and increase the likelihood that the L.P. gas would be rendered undetectable to the consumer. Neither does the fact, if it be such, that the gas could no longer be identified to its particular supplier, taken alone, logically lead to the conclusion that there has been a substantial change in the product such as would bar indemnification. If all suppliers did, in fact, add odorant in conformance with or in excess of industry standards, then the inference is that the odorant level in the solution would have been at least at, if not above, the standard.

The addition of odorant in conformance with industry standards does not necessarily establish that the odorant was adequate to warn Miller of its presence. The affidavit of an expert, filed by the original plaintiff, the Miller estate, does indeed raise the possibility that under some circumstances odorant added to L.P. gas may break down and lose its effectiveness as a warning device. Since a manufacturer has a non-delegable duty "to warn of the presence of a latent defect and the potential danger in use of the product should the defect become effectively operative," *Hoffman v. E.W. Bliss Co.*, (1983), Ind., 448 N.E.2d 277, 286, evidence of the potential for breakdown of the odorant suggests that the fact of the addition of odorant in conformance with industry standards would not be dispositive of the Suppliers' liability to indemnify Petrolane. There is nothing in the record to suggest that commingling the gas would somehow trigger or hasten any possible breakdown of the odorant added to the gas.

Furthermore, the Suppliers attempt to confuse the issue of substantial alteration, a term which properly refers to a determination of increased likelihood of malfunction, *Cornette, supra,* with the question of identity of the Suppliers. They argue that Petrolane would be unable to trace the gas supplied to the Miller home back to a specific supplier. The testimony upon which the Suppliers place great reliance for this proposition is that of Petrolane's district manager, Stephen C. Baker, who in response to a deposition question, replied that "it would be almost impossible" to tell which Supplier's fuel wound up in the Miller's tank since all the gas is mixed together in Petrolane's storage tank. Whether Mr. Baker was qualified to make such statements is unclear since no educational or expert qualifications were established during deposition. *See, Matter of Estate of Belanger* (1982), Ind.App., 433 N.E.2d 39 (on reviewing motion for summary judgment certain threshold decisions must be made pertaining to the evidential worth of the documents submitted.) As we noted above the mere inability to distinguish the product of the individual suppliers does not, alone, constitute a substantial change. Moreover, we are not persuaded that Mr. Baker's opinion necessarily forecloses the possibility of such identification evidence at trial. The "mere surmise of what evidence the plaintiff may present at trial, or that

the plaintiff will have difficulty proving a fact ... are not proper bases upon which to grant summary judgment." *F.W. Means & Co. v. Carstens* (1981), Ind.App., 428 N.E.2d 251, 258. It is conceivable that Petrolane could introduce evidence establishing which Supplier's gas remained in the solution and in what proportion based upon records of additions to and withdrawals from Petrolane's storage tanks. The record shows that not only are there records of supplier deliveries to Petrolane, but also records of Petrolane's withdrawals and deliveries to customers.

Casting the Identity-of-the-Suppliers issue in terms of a proximate cause problem, the Suppliers argue in essence that because the gas was mixed and the Suppliers could not be identified, there was a substantial change and because there was a substantial change which prevented the Suppliers from being identified Petrolane could not establish that the Suppliers' gas proximately caused the explosion. Although we conclude that our discussion of substantial change above shows the lack of merit in this somewhat circular argument, we also feel constrained to make two additional points. First, in spite of Petrolane's possible difficulty in establishing exactly whose gas was in the storage tanks, the Suppliers produced no evidence that their gas was *not* in the storage tank and therefore not in the shipment delivered to the Millers. In the absence of such evidence it cannot be said that the Suppliers have met the burden of negating the existence of a factual issue on proximate cause. *Kahf, supra.* In general, the question of proximate cause is for the court only in plain and indisputable cases, and if there is any reasonable doubt as to proximate cause, it is a question of fact to be determined by the jury. *New York Central Railroad Company v. Cavinder* (1965), 141 Ind.App. 42, 211 N.E.2d 502, 508.

The second point we make regarding proximate cause is that, in spite of the Suppliers' emphasis on Petrolane's alleged inability to establish liability in any one Supplier, the rule is that where the separate and independent acts of two or more parties are the direct causes of a single injury, and it is not possible to determine in what proportion each contributed, any or all may be held responsible for the injury. *Westfield Gas & Milling Co. v. Abernathy* (1893), 8 Ind.App. 73, 35 N.E. 399, 401. In view of the evidence that odorants may break down in some circumstances, it may not be necessary for Petrolane to establish fault on the part of any particular Supplier. If all Suppliers were following the same standard regarding the addition of odorant and the odorant or the standard is found inadequate, then all Suppliers may be liable to indemnify Petrolane for damages caused by their concurring acts.

Since it cannot be said as a matter of law that commingling the gas of the several Suppliers results in a substantial change and since Petrolane, as the non-movant, has offered evidence that commingling did not cause any appreciable change in the product, we conclude that a genuine issue of material fact remains on the question of substantial change. Furthermore, since the identity of the Supplier or Suppliers whose gas eventually reached the Miller home is peculiarly fact sensitive especially as it relates to the issue of proximate cause, we hold that the trial court erred in granting the Suppliers' motion for summary judgment. We therefore reverse and remand this cause for trial.

ROBERTSON, J. (by designation), concurs.

HOFFMAN, J., concurs in result.