**ART COUNTRY SQUIRE, L.L.C.,**
**Appellant–Defendant,**

**American Realty and Trust, Inc.,**
**Defendant and Cross–Claim**
**Defendant Below,**

**Atlantic Limited Partnership XII, Atlantic XIII, L.L.C., David M. Clapper, Defendants, Cross–Claimants, and Third–Party Plaintiffs Below,**

v.

**INLAND MORTGAGE**
**CORPORATION, Appellee–Plaintiff.**

No. 49A05–0004–CV–146.

Court of Appeals of Indiana.

April 10, 2001.

Jay Jaffe, Baker & Daniels, Robert F. Dolack, Huffer & Weathers, P.C., Indianapolis, IN, J. Robert Arnett, II, Sopuch Nouhan Higgins & Arnett, L.L.P., Dallas, TX, Attorneys for Appellants.

Theodore J. Nowacki, Michael A. Trentadue, M. Miles Sukovic, Bose McKinney & Evans LLP, Indianapolis, IN, Attorneys for Appellee.

## OPINION

RATLIFF, Senior Judge

### STATEMENT OF THE CASE

Defendants–Appellants Art Country Squire, L.L.C. ("Art Country Squire"), American Realty and Trust ("American

Realty"), Atlantic Limited Partnership XII ("Atlantic Limited"), Atlantic XIII, L.L.C. ("Atlantic"), and David M. Clapper ("Clapper") (collectively, "the Defendants") appeal the trial court's grant of summary judgment in favor of Inland Mortgage Corporation ("Inland").

We reverse and remand.

## ISSUES

The Defendants raise numerous issues for our review, which we consolidate and restate as Issues I and II below. Art Country Squire and American Realty raise two additional issues, one of which we address and restate as Issue III below[1]:

I. Whether the trial court erred in finding as a matter of law that the Installment Note at issue provided for the imposition of a late payment charge on the final balloon payment at the maturity of the loan.

II. Whether the trial court erred in finding as a matter of law that the default interest rate was not an unenforceable penalty.

III. Whether the trial court erred in finding that there was no genuine issue of material fact on the question of whether Inland retained limited partnership interests in satisfaction of the obligations owed to Inland.

## FACTS AND PROCEDURAL HISTORY

Atlantic Limited borrowed $2,070,000.00 from Inland. The loan is evidenced by an Installment Note (the "Note") in the principal amount and secured by a "First Mortgage and Security Agreement" on an apartment project located in Marion Coun-

ty, Indiana (the "Property"). The Note calls for monthly payments of interest and a balloon payment of the entire remaining balance on the designated maturity date. In connection with this loan, Clapper executed and delivered to Inland a "Loan Guaranty Agreement," guarantying the payment of the note.

Atlantic assumed the obligations of Atlantic Limited under the Note and related loan documents, and Clapper executed and delivered a "Reaffirmation of Guaranty." A subsequent modification increased the principal amount to $2,238,028.14 and extended the maturity date.

American Realty and certain affiliates entered into an agreement with Clapper and certain entities owned or controlled by Clapper, including Atlantic and Atlantic Limited. Essentially, Clapper and his entities agreed to convey the Property to Art Country Squire. This conveyance occurred at a time when Inland considered the Loan to be in default for various reasons, including waste to the Property. Clapper, Atlantic, Art Country Squire, American Realty, and Inland subsequently executed an "Assumption, Modification, and Extension of Agreement" (the "Extension Agreement"), whereby Inland agreed to again extend the maturity date and forbear from enforcing its rights with regard to the defaults in exchange for promises and covenants contained in the Extension Agreement. Art Country Squire assumed the obligations under the Loan Documents, American Realty executed and delivered a loan guaranty to Inland, and Clapper reaffirmed his prior guaranty.

Art Country Squire and American Realty requested, and were denied, an addi-

1. Art Country Squire and American Realty also contend that the trial court erred in denying their motion for a continuance. This issue is rendered moot by our decision on the other issues.

tional extension of the Loan. Art Country Squire subsequently defaulted on the loan.

Inland filed a complaint seeking, inter alia, a judgment on the Note and foreclosure of the mortgage and security interests on personal property and real estate that constitutes the Property. Inland also requested, and was granted, the appointment of a receiver during the pendency of the action.

Inland subsequently filed a motion for summary judgment and supporting memorandum in which it asserted that there was no genuine issue of material fact and/or that it was entitled to judgment as a matter of law on its claims that it was entitled to (1) a five percent late payment charge on both untimely monthly payments and the unpaid balloon payment, and (2) a default interest rate on both untimely monthly payments and on the unpaid balloon payment. The trial court granted summary judgment, and this appeal ensued.

## DISCUSSION AND DECISION

### I. APPLICATION OF LATE PAYMENT CHARGE

■ The Defendants contend that the trial court erred in determining as a matter of law that the Note and related documents mandated that a five percent late payment charge be applied to both the late monthly payments and the unpaid balloon payment. The Defendants, except for Art Country Squire and American Realty, argue that the Note and related documents unambiguously mandate that the five percent late payment charge is to be applied only against untimely monthly payments.[2]

■ The determination of whether a contract is ambiguous is a question of law for the court; thus, it is a question for

which summary judgment is particularly appropriate. *Hagerman Construction, Inc. v. Copeland,* 697 N.E.2d 948, 962 (Ind. Ct.App.1998), *amended on rehearing, trans. denied.* In interpreting an unambiguous contract, we give effect to the intentions of the parties as expressed in the four corners of the document. *Kaghann's Korner, Inc. v. Brown & Sons Fuel Co., Inc.,* 706 N.E.2d 556, 565 (Ind. Ct.App.1999), *clarified on rehearing,* 711 N.E.2d 1286 (Ind.Ct.App.1999). Clear, plain, unambiguous terms are conclusive of that intent. *Id.* We will neither construe clear and unambiguous provisions nor add provisions not agreed upon by the parties. *Id.* The meaning of a contract is to be determined from an examination of all of its provisions, not from a consideration of individual words, phrases, or even paragraphs read alone. *Eck & Associates, Inc. v. Alusuisse Flexible Packaging, Inc.,* 700 N.E.2d 1163, 1167 (Ind.Ct.App.1998), *trans. denied.* In the absence of anything to indicate a contrary intention, we will consider writings executed at the same time and relating to the same transaction. *Salcedo v. Toepp,* 696 N.E.2d 426, 435 (Ind.Ct.App.1998). We review questions of law under a de novo standard and owe no deference to a trial court's legal conclusions. *Wayne Metal Products Co., Inc. v. Indiana Department of Environmental Management,* 721 N.E.2d 316, 317 (Ind.Ct. App.1999), *trans. denied.*

The Note provides:

All monthly payments shall be due and payable on the first day of the month. If any payment due hereunder is not made on or before the 10th day after the date such payment is due, a late payment charge equal to 5% of the delinquent payment shall be due and

---

**2.** Art Country Squire and American Realty argue that the Note and related documents are ambiguous. They agree, however, that the late payment charge is to be applied only against untimely monthly payments.

payable and the interest rate hereunder shall increase to the Default Rate on the entire outstanding principal sum and all accrued and unpaid interest thereon effective the date such payment was due until such default in payment is cured, which cure will include, but not be limited to, payment of such increased interest and the late payment charge.

(R. 26).

The opening sentence of the paragraph, typically called the "topic sentence," indicates that the paragraph will address the topic of monthly payments. Neither the topic sentence nor any other sentence in the paragraph makes reference to the balloon payment. The second sentence, which imposes the late payment charge, must be read to apply only to the topic of the paragraph, i.e., monthly payments. This conclusion is buttressed by the final portions of the second sentence, which provides that the default interest rate will be imposed only "until such default in payment is cured," contemplating that, thereafter, the interest rate would revert to the contract rate of interest. This portion of the sentence would make no sense if applied to the balloon payment because there would be no accrual of interest, and thus no reversion to the contract rate, after payment of the balloon amount is made.

Inland claims that this paragraph in the Note must be interpreted in light of Paragraph 43 of the Mortgage, a claim to which we agree. This paragraph, entitled "Late Payment, Mortgagee's Rights," provides:

If Mortgagor is late in the making of any payment due under the Note secured hereby, Mortgagee shall have the right to increase the interest rate under the Note to the greater. of the (i) Wall Street Journal Prime Rate plus eight percent (8%) per annum, or (ii) eighteen percent (18%) per annum until the default in payment is cured, charge a late payment equal to five percent (5%) of the delinquent payment and accelerate the principal balance and all accrued and unpaid interest due under the Note, all as provided in the Note.

(R. 55).

This paragraph gives Inland, in the event of a late payment, the right to (1) charge default interest, (2) impose a five percent late payment charge, and (3) accelerate the principal and all accrued and unpaid interest. Acceleration has no application to the final balloon payment because all principal and interest would already be due. Accordingly, this paragraph, like the aforementioned paragraph in the Note, applies only to untimely monthly payments.

Inland also claims that the term "any payment" in the second sentence of the Note, and presumably the term as used in Paragraph 43 of the Mortgage, must be interpreted to refer to the balloon payment because "[i]t is clear from an examination of the entire Note that when the parties thereto meant only the monthly payments they said 'monthly payment,' when they meant 'balloon payment' they used the term 'balloon payment,' and when all payments, including the balloon payment were intended, they used the term 'payment' or 'any payment.'" Appellee's Brief at 16. In order to accept Inland's claim, we would have to ignore the clear context of the aforementioned paragraphs. Nothing in the other provisions of the Note or the Mortgage compels us to do so.

We hold that the late payment charge applies only to the untimely monthly payments. The trial court erred in applying the charge to the unpaid balloon payment.

## II. PROPRIETY OF THE DEFAULT INTEREST RATE

The Defendants contend that the trial court erred in determining as a matter of

law that the Note provision raising the interest rate from the contract rate of 10.75% to 18% upon default was an enforceable liquidated damages provision. The Defendants argue that Inland failed to show that there were no genuine issues of material fact on this question and that it was entitled to judgment as a matter of law.

The purpose of summary judgment is to end litigation when no issue of material fact exists and when the case may be determined as a matter of law. *LeBrun v. Conner*, 702 N.E.2d 754, 756 (Ind. Ct.App.1998). We must exercise caution to ensure a party of its right to a fair determination of genuine issues. *E.Z. Gas, Inc. v. Hydrocarbon Transportation, Inc.*, 471 N.E.2d 316, 318 (Ind.Ct.App. 1984). The burden is on the movant to negate the existence of any genuine issue of material fact, and all doubts must be resolved against the movant. *Id.* It is only after the movant makes a prima facie showing of the non-existence of a genuine issue of material fact that the burden shifts to the nonmovant to set forth specific facts showing the existence of a genuine issue for trial. T.R. 56(E). In reviewing the nonmovant's response, we consider as true the facts set forth in the nonmovant's affidavits and liberally construe discovery in the nonmovant's favor. *E.Z. Gas*, 471 N.E.2d at 318.

In Indiana, we have enforced provisions within contracts that provide for liquidated damages. *Gershin v. Demming*, 685 N.E.2d 1125, 1128 (Ind.Ct.App. 1997). However, where the liquidated damages are "grossly disproportionate to the loss which may result from the breach or [are] unconscionably in excess of the loss sought to be asserted, [we] will treat the sum as a[n] [unenforceable] penalty rather than as liquidated damages." *Czeck v. Van Helsland,* 143 Ind.App. 460, 241 N.E.2d 272, 274 (1968) (quoting *Beiser v. Kerr,* 107 Ind.App. 1, 20 N.E.2d 666 (1939)). Generally, we look more favorably upon a liquidated damages provision where it appears from all the evidence that a good faith effort was made by both parties to determine a reasonable amount of liquidated damages and that the actual amount was uncertain or difficult to ascertain at the time of the execution of the agreement. *Id.* at 275.

The question of whether a contract provision provides for liquidated damages or for an unenforceable penalty is a question of law for the court. *Id.* In determining whether a contract provision constitutes liquidated damages or an unenforceable penalty, we consider the facts, the intention of the parties, and the reasonableness of the stipulation under the circumstances of the case. *Gershin,* 685 N.E.2d at 1128. Thus, even though the question is one of law, it may require resolution of underlying factual issues. *See Wasserman's, Inc. v. Township of Middletown,* 137 N.J. 238, 645 A.2d 100, 110 (1994).

In the present case, Inland argued in support of its motion for summary judgment that the default interest rate provision should be found as a matter of law to be an enforceable damage provision, rather than an unenforceable penalty provision, because (1) the provision arose from negotiations between sophisticated and experienced real estate investors who were represented by counsel in an "arm's length fully-negotiated transaction"; (2) the provision was reaffirmed in the various additional documents; (3) the default rate is below the usury rate for consumer loans; (4) there is no usury rate for commercial loans; and (5) the increased rate was necessary to compensate for the time bank

officers spent dealing with the default.[3] Inland also argued, without designation of evidence in support thereof, that such provisions are common, if not standard, in commercial loans.

As stated above, our determination is a question of law that is informed by the underlying facts, intentions of the parties, and reasonableness of the provision under the circumstances. While the arguments raised by Inland are certainly relevant to a trial court that is attempting to determine whether a provision is a liquidated damage provision or an unenforceable penalty, they fall short of establishing that there is no genuine issue of material fact or that the 18% default interest rate is as a matter of law reasonable under the circumstances. Other than the passing argument pertaining to the time spent by bank officers, Inland has totally failed to designate any evidence, by affidavit or otherwise, which bears upon the issue of whether the additional interest gleaned from application of the default rate is proportionate to the expected damages. Accordingly, the trial court erred in granting summary judgment on this issue.

Inland places much emphasis on our supreme court's holding in *Court Rooms of America, Inc. v. Diefenbach*, 425 N.E.2d 122 (Ind.1981). We note that in that case, the plaintiffs presented evidence of the types of damage that it suffered. Under these circumstances, the court held that it could not conclude that the liquidated damages were out of proportion to the actual damages suffered. *Id.* at 124. The evidence reviewed by our supreme court in *Diefenbach* is exactly the type of evidence that Inland failed to designate in support of its summary judgment motion.

Inland also places some emphasis on our supreme court's decision in *Wernwag v. Mothershead*, 3 Blackfd. 401, 1834 WL 1947 (1834). In this decision, the supreme court did, without discussion, approve a provision imposing a default rate of interest. We find this case to be of little precedential value, however, because it was decided on the narrow ground of whether the lender was required to make a special averment of non-payment of interest and because it antedates the development of the reasonableness test over the ensuing 170 years.

It appears that Inland's failure to designate evidence in support of its summary judgment motion is premised on its belief that a default interest rate provision should not be analyzed for its reasonableness. When presented with the same issue, the Supreme Court of New Jersey held:

> Because default and late charges are not liquidated damages at all in the traditional sense, but are simply part of the pricing of commercial loans between sophisticated parties, [the lender] asserts that in the absence of unconscionability or illegality those charges should be enforced. We agree in today's competitive market that ordinarily such charges are part of the cost of doing business. We, however, prefer to incorporate that factor into the 'reasonableness' test. Courts are accustomed to dealing with the standard of reasonableness. We think that standard rather than an 'unconscionability' standard provides an ad-

---

**3.** Inland attempts to raise other arguments in its appellate brief. These arguments do not appear to pertain to the issue of the reasonableness of the default rate as they mostly refer to damages that are covered by other provisions of the Note. Furthermore, a party may not raise a new argument for the first time on appeal. *See Campbell v. El Dee Apartments*, 701 N.E.2d 616, 620 n. 3 (Ind.Ct. App.1998).

equate safeguard for the lenders and better protection for the borrowers.

*MetLife Capital Financial Corp. v. Washington Avenue Associates L.P.,* 159 N.J. 484, 732 A.2d 493, 504 (1999). We agree with the court's reasoning, and we therefore decline Inland's apparent invitation to abandon the reasonableness test.

## III. RETENTION OF LIMITED PARTNERSHIP INTERESTS

■ Art Country Squire and American Realty contend that the trial court erred in concluding that "Inland has not retained limited partnership interests in Art Midwest, L.P. in satisfaction of or reduction of the obligations owed Inland." (R. 1302). Specifically, Art Country Squire and American Realty argue that upon default, Inland elected to retain the limited partnership interests in Art Midwest, L.P. (the "L.P. interests") in satisfaction of the debt pursuant to the Indiana Uniform Commercial Code.

Inland counters Art Country Squire and American Realty's contention by stating that there is no evidence to indicate that it ever received the L.P. interests. Specifically, Inland argues that the absence of an executed copy of the Pledge Agreement as part of the designated evidence is dispositive.

The Extension Agreement, which was part of the designated evidence below, indicates that Inland conditioned both its consent to the transfer of the Property from Atlantic Limited, Atlantic, and Clapper to Art Country Squire and American Realty and to the extension and modification of the loan upon the execution by the Defendants of certain documents attached to the agreement. One of these attached documents was the Pledge Agreement that granted Inland a security interest in the L.P. interests. For purposes of summary judgment, it can be inferred that Inland's

subsequent extension of the loan was preceded by receipt of the L.P. interests. Thus, there is a question of fact on the issue of whether Inland received and retained the collateral.

Inland also argues that its retention or disposal of the L.P. interests is not governed by the Indiana Uniform Commercial Code. Inland points to Ind.Code § 26–1–9–501(4), which provides that when a security agreement covers both real and personal property the secured party may proceed in two ways. It may proceed as to the personal property under the Uniform Commercial Code, or it may proceed as to both the real and personal property in accordance with its rights and remedies in respect of the real property. The Uniform Commercial Code does not apply if the secured party elects to proceed in the latter manner.

The designated evidence shows that Inland holds security interests in real property, personal property associated with the real property, and the L.P. interests. Art Country Squire and American Realty contend that Inland proceeded against the real property and the personal property associated with the real property in accordance with its rights and remedies in respect to the real property, but took no action regarding the L.P. interests. Inland, on the other hand, contends that it "proceeded against the real and personal property referred to in its Mortgage in accordance with Indiana Law relating to foreclosure of real property all as permitted by the UCC as enacted in Indiana." Appellee's Brief at 34. There is no definitive evidence on this issue, and the determination of whether the Uniform Commercial Code applies is a factual issue for the trier of fact.

Art Country Squire and American Realty rely on *Wisconics Engineering, Inc. v. Fisher,* 466 N.E.2d 745 (Ind.Ct.App.1984),

*trans. denied,* in support of their contention that summary judgment is inappropriate. In *Wisconics,* we held that a genuine issue of material fact existed as to whether the secured creditor's conduct constituted a retention of collateral in full satisfaction of the debt. We pointed to Indiana Uniform Commercial Code § 9–505(2), which provides that a secured party may, after default, propose to retain the collateral in satisfaction of the obligation by giving written notice of such proposal to the debtor. In response to Fisher's contention that he could not have retained the collateral under § 9–505(2) because he did not give written notice, we held that

> A secured party should not be permitted to profit by his retention of collateral for an indefinite or unreasonable period of time by asserting his right to a deficiency amount on the debt, claiming that he had no intent to retain the collateral in satisfaction thereof as evidenced by the absence of written notice to retain. Therefore, there may be circumstances in which strict compliance with the written notice provisions of § 9–505(2) are not essential to a claim that the secured party, by his unreasonable conduct, retained the collateral in satisfaction of the debt.

*Id.* at 763. We then noted several factors which may be pertinent to the determination of the secured party's intent, including (1) the reasonableness of the time period in which the collateral was retained; (2) the value of the stock; (3) the rights of the parties under the pledge agreement; and (4) other evidence bearing on the secured party's intent. *Id.* at 764–66. As noted by Inland in its brief, the evidence pertaining to the presence or absence of damages to the debtor occasioned by retention of the collateral is also a pertinent factor. A determination under *Wisconics* is a fact-sensitive one, and in the present case the determination requires the weighing of ev-

idence. The trial court erred in granting summary judgment.

Inland contends that under the circumstances of this case, we should apply *Snyder v. Bank One, Kentucky, N.A.,* 113 F.3d 774 (7th Cir.1997). In *Snyder,* the Seventh Circuit distinguished *Wisconics* by emphasizing that actions of the secured party, Bank One, were far less intrusive than the actions taken by the secured party in *Wisconics. Id.* at 780. The *Snyder* court further emphasized that Bank One, unlike the secured party in *Wisconics,* used reasonable care for the month "it was possible to do." *Id.* There is no designated evidence that would support such a conclusion in the present case.

## CONCLUSION

The trial court erred in determining as a matter of law that the Note authorized imposition of a late payment charge on the defaulted final balloon payment. The trial court also erred in determining, upon the designated evidence before it, that Inland was entitled to summary judgment on the default interest rate issue. Finally, the trial court erred in determining that there was no genuine issue of material fact pertaining to the retention of the L.P. interests.

We reverse and remand with instructions that the trial court vacate its summary judgment and that it conduct further proceedings consistent with this opinion.

DARDEN and VAIDIK, JJ., concur.