Wesley H. FUEGER, Appellant–Plaintiff,

v.

CNH AMERICA LLC, Appellee–Defendant,

and

Case Corporation, Case IH, Case Equipment Corporation, Case LLC, and Dennis Fueger, individual and d/b/a Fueger Farms, Appellee–Defendants.

No. 74A04–0712–CV–683.

Court of Appeals of Indiana.

Aug. 21, 2008.

Mark A. Kircher, Milwaukee, WI, Attorney for Appellant.

Nicholas C. Pappas, Julia Blackwell Gelinas, Lucy R. Dollens, Indianapolis, IN, Attorneys for Appellee.

## OPINION ON PETITION
## FOR REHEARING

BARTEAU, Senior Judge.

Case Corporation, Case IH, Case Equipment Corporation, Case LLC, CNH America LLC (collectively "Case") bring this petition for rehearing, requesting that we reconsider our conclusion that the trial court erred by granting Case's motion to strike the expert affidavit of Walter Yeager ("Yeager"). We reaffirm our opinion on that issue, but grant Case's petition for rehearing solely for the purpose of more fully explaining our decision on the issue of summary judgment.

In addition to holding that the trial court erred by granting Case's motion to strike the expert's affidavit, we held in our prior opinion in this matter, *Fueger v. Case Corp.*, 886 N.E.2d 102 (Ind.Ct.App.2008), that the trial court erred by granting summary judgment in favor of Case. Case previously argued that regardless of this court's decision on the admissibility of Yeager's affidavit and testimony, that summary judgment in Case's favor was still appropriate. Case argued that Fueger had failed to establish in the designated materials, a question of fact that: 1) the skid loader was defective at the time of sale and had not been substantially altered; 2) there was another cost-effective design that could have prevented the injury; and 3) the skid loader was not state of the art.

Fueger's claim is based upon the Indiana Product Liability Act ("the Act"). Ind.Code § 34–20–1–1 *et seq.* The Act governs all actions that are:

> (1) brought by a user or consumer;
>
> (2) against a manufacturer or seller; and
>
> (3) for physical harm caused by a product;

regardless of the substantive legal theory or theories upon which the action is brought.

Ind.Code § 34–20–2–1, which governs a manufacturer's or seller's potential liability, provides as follows:

> Except as provided in section 3 of this chapter, a person who sells, leases, or otherwise puts into the stream of commerce any product in a defective condition unreasonably dangerous to any user or consumer or to the user's or consumer's property is subject to liability for physical harm caused by that product to the user or consumer or to the user's or consumer's property if:
>
> (1) that user or consumer is in the class of persons that the seller should reasonably foresee as being subject to the harm caused by the defective condition;
>
> (2) the seller is engaged in the business of selling the product; and
>
> (3) the product is expected to and does reach the user or consumer without substantial alteration in the condition in which the product is sold by the person sought to be held liable under this article.

First, Case argued that Fueger failed to establish the existence of a defect because the skid loader was substantially changed from the time of sale. Case designated to the trial court Fueger's father's deposition testimony that there were items of disre-

pair on the skid loader pre-dating Fueger's accident. More specifically, Fueger's father testified that the seat bar would not stay up by itself, and the left control lever would stick and not return to center. Appellant's App. pp. 49–50. Case cited to *E.Z. Gas, Inc. v. Hydrocarbon Transp., Inc.*, 471 N.E.2d 316, 319 (Ind.Ct.App. 1984), for the proposition that:

a substantial change is defined as any change which increases the likelihood of a malfunction, which is the proximate cause of the harm complained of, and which is independent of the expected and intended use of the product.

Case reached the conclusion that the items of disrepair met the definition of "substantial change" and caused the accident.

On the other hand, Fueger's expert, Yeager, stated in his affidavit, which was designated to the trial court, that there was no modification or alteration of the skid loader after it was originally delivered to the initial user. Appellant's App. p. 72. Yeager stated that what had occurred was normal wear and tear that was to be reasonably expected. *Id.* Yeager stated that the on/off switch placement was a safety design defect, as was the design of the seat bar and lift control lever.

Therefore, it appears that there is a question of fact regarding whether the skid loader had been substantially changed or altered since being placed by Case into the stream of commerce. Fueger argued that the normal wear and tear was not a substantial change, but the result of the safety design defect. The trial court erred by deciding this issue through summary judgment.

Case next argued that Fueger failed to establish a question of fact regarding the existence of a cost-effective design that could have prevented the injury. During Yeager's deposition, which was designated to the trial court, Yeager testified that he had examined a Bobcat skid loader that was roughly the same age as the Case skid loader. Appellant's App. p. 124. Yeager testified that the control mechanisms available on the Bobcat were foot controls as opposed to hand controls. *Id.* Yeager stated that he had also studied other vintage machines and found various features of those machines to be considerably safer than the Case skid loader. *Id.* He specifically stated that other machines used different systems of interlock and access to controls. *Id.* Therefore, based upon Yeager's testimony it appears that there is a genuine issue of fact regarding the existence of a cost-effective design that could have prevented Fueger's injuries.

Case also argued that Fueger failed to establish that the skid loader was not state of the art. Case argued that many if not all of the major manufacturers in 1994 placed the ignition switches in the front of the skid loader cab. Case argued that the skid loader in question was state of the art for 1994. Yeager, in his deposition testimony, argued that the position of the ignition switch on Case's skid loader was not only capable of being reached from the outside, as were the others, but was more clearly visible to the operator from outside the cab. Yeager contended that the position of the ignition switch in the Case skid loader was not state of the art because it was more likely to be misused due to the visibility of the switch coupled with its location.

Case argued that it had established through the deposition testimony of Gary Stromberg, that Case's skid loader was state of the art at the time it was manufactured because it complied with SAE J1388 Personnel Protection for Skid Steer Loaders. This safety standard was promulgated by the Society of Automotive Engineers. Case argued that it was entitled to the rebuttable presumption that the prod-

uct was not defective and the manufacturer was not negligent because the design was state of the art because of SAE J1388. See Ind.Code § 34–20–5–1.

Fueger, contended, on the other hand, that Case was not entitled to that rebuttable presumption because SAE J1388 was promulgated by the Society of Automotive Engineers, and not the government. Yeager, again, argued that the Bobcat model he had observed was state of the art. It appears from the testimony available to the trial court at the summary judgment stage that there was a question of fact regarding whether the skid loader was state of the art. Accordingly, Case was not entitled to summary judgment, and the trial court erred.

We reaffirm our previous opinion on the issue of the admissibility of the expert's affidavit and testimony, and we grant the Petition for Rehearing for the sole purpose of more fully explaining our decision on the issue of summary judgment.

SHARPNACK, S.J., and CRONE, J., concur.