**PAYDAY TODAY, INC., Appellant–Defendant,**

v.

**Anne DEFREEUW, Appellee–Plaintiff.**

**No. 71A05–0804–CV–253.**

Court of Appeals of Indiana.

April 9, 2009.

Rehearing Denied June 22, 2009.

Edward R. Hall, Merrillville, IN, Attorney for Appellant.

## OPINION

BARTEAU, Senior Judge.

### STATEMENT OF THE CASE

Plaintiff–Appellant Payday Today, Inc. appeals a portion of the trial court's judg-

ment in Payday's suit against Defendant–Appellant Anne Defreeuw. We affirm.

## ISSUES

Payday raises two issues for our review, which we restate as:

I. Whether the trial court erred in allowing Payday to collect under Ind. Code § 34–24–3–1 but in denying Payday's alternative request for damages for breach of a small loan (payday) contract.

II. Whether the trial court erred in not allowing Payday to recover its claim for the payment of 325.89% interest on a loan made by Payday to Defreeuw.

## FACTS AND PROCEDURAL HISTORY

On June 5, 2004, Defreeuw applied for a $200.00 loan from Payday. The stated term of the loan was for fourteen days and the finance charge was $25.00.

Defreeuw presented security to Payday in the form of a postdated check in the amount of $225.00 to cover the principal and the finance charge. Defreeuw did not pay off the loan within fourteen days, and when her check was presented by Payday, it was returned by Defreeuw's bank stamped "closed account."

Payday sued Defreeuw in small claims court for fraud and requested treble dam-

ages in the amount of $675.00, attorney fees in the amount of $500.00, and a one-time statutory fee in the amount of $20.00, totaling $1,195.00 plus court costs in the amount of $46.00. In the alternative, Payday also requested damages in the amount of $2,100.00 to represent the 325.89% interest it believed it was charging over the 84 bi-weekly periods when the loan was unpaid.

At the hearing on this matter, Payday presented evidence in support of its argument that Defreeuw committed fraud by falsely asserting that she had no outstanding payday loans and by closing her account before Payday could cash her check. Defreeuw did not dispute the first assertion, but she did argue she had no intent to defraud Payday at the time she submitted the post-dated check.[1] The trial court ordered Defreeuw to pay the $1,195.00 plus court costs because she "provided false information on her loan application when she failed to disclose to [Payday] other outstanding payday loans."[2] Appellants' App. at 2. However, the court did not order the payment of the interest accrued at the 325.89% rate. Payday now appeals.

## DISCUSSION AND DECISION

### I. COURT'S REFUSAL TO ORDER PAYMENT OF PAYDAY'S ALTERNATIVE CLAIM

■ Payday first argues that the trial court erred in allowing Payday to recover

---

1. Because DeFreeuw has not questioned the propriety of the fraud finding, the award of treble damages, or the award of attorney fees, we do not address these issues here. Accordingly, this case is not precedent on any of these issues.

2. Ind.Code § 24–4.5–7–404(3) provides that a payday lender is barred from issuing additional small loans when the borrower has more than two outstanding payday loans or a total of $500.00 in such loans. Payday relied on

Defreeuw's assertion that she had no other payday loans, when in fact she had a number of outstanding loans. It is apparent that the trial court's order is based on Ind.Code § 35–43–5–3(a)(2), which defines deception as "knowingly or intentionally mak[ing] a false or misleading written statement with intent to obtain property...." Under Ind.Code § 34–24–3–1, the offense of deception allows the injured party to recover treble damages, attorney fees, and other penalties.

treble damages and other penalties for fraud but not allowing it to recover for breach of contract. We first note that in its complaint, Payday raised fraud as Counts I and II and raised breach of contract in Count III as an "alternative cause of action." Appellant's App. at 47. It was not until trial that Payday first asserted that it was entitled to damages for *both* fraud and breach of contract.

 Indiana Trial Rule 8(E)(2) allows a party to plead alternative and even inconsistent theories of recovery. T.R.8(E)(2) "is designed to avoid that problem that a plaintiff may recover nothing on a valid claim if forced to speculate as to which theory [a trier of fact] will ultimately find credible." *See Randles v. Indiana Patient's Compensation Fund,* 860 N.E.2d 1212, 1229 (Ind.Ct.App.2007), *trans. denied.* Here, Payday clearly pled fraud with breach of contract as an alternative thereto. Stated differently, Payday did not plead that it was entitled to recover under both theories. Indeed, it waited until the end of its case in chief in a small claims hearing involving a pro se defendant to assert for the first time that it should recover for both fraud and the so-called alternative breach of contract claim. The trial court understandably ruled on the fraud claim that Payday indicated was the issue before the court but did not address the claim that was designated by Payday as solely a backup claim. It appears that the trial court understood that Defreeuw did not have timely notice of Payday's intent to recover under both theories. We do not find any error here.

## II. BREACH OF CONTRACT DAMAGES

### A. Statutory Provisions

 The nature of this type of proceedings involving a loan to a destitute borrower makes it unlikely that a borrower will ever be able to participate in the appellate process. Therefore, even though we have concluded that Payday waived any possible breach of contract action whereby it can recover its claimed 325.89% interest rate, we will address the issue as if waiver had not occurred. Waiver notwithstanding, Payday still cannot prevail.

Payday contends that it is authorized by state statutes to recover the claimed interest rate on its loan to Defreeuw; however, it does not make a cogent argument pertaining to the statutes. In addressing Payday's generalized claim, we must look at the history of usury laws that has culminated in the passage of Indiana's "Uniform Consumer Credit Code–Small Loans" chapter ("Small Loans Act" found at Ind. Code § 24–4.5–7–101 *et seq.*) of the Indiana Uniform Consumer Credit Code ("IUCCC" found at Ind.Code § 24–4.5).

Usury legislation to cap interest rates on loans predates the founding of our country. Christopher Peterson, "Usury Law, Payday Loans, and Statutory Sleight of Hand: Salience Distortion in American Credit Pricing Limits," 92 Minn. L.Rev. 1110, 1116 n. 13 (2008) (citing "Act to Reduce the Rate of Interest" (1713), s Ann. C. 16 (Eng.)). Great Britain promulgated such legislation in 1713, and the Founding Fathers of our country all returned home from the Constitutional Conventions to states that had legislation limiting the amount of interest that could be charged on a loan. *Id.* at 1160. This type of legislation was promulgated in continental Europe even earlier than in England or the United States and was based on moral, religious, and practical considerations endorsed by such diverse luminaries as Charlemagne, Martin Luther, and recently, Pope John Paul II. *Id.* at 1117–1119. Usury and the small loans were also topics

discussed by Benjamin Franklin's alter ego, Poor Richard. *Id.*

Indiana's first usury statutes were passed before the turn of the 20th century, and they were replaced by the IUCCC in 1971. *See Livingston v. Fast Cash USA, Inc.* 753 N.E.2d 572, 575 (Ind.2001). The IUCCC retreated from Indiana's former charge of a monthly rate on loans (both small and large) and instituted an annual interest rate. *Id.* Indeed, the 1971 version of the statute set the annual limit at 36%. *Id.* In *Livingston,* our supreme court held that small payday loans were governed by the IUCCC's limitation on usurious interest rates and by Indiana's loansharking statute. *Id.* at 577.

In *Cash in a Flash, Inc. v. McCullough,* 853 N.E.2d 533 (Ind.Ct.App.2006), this court followed the lead of our supreme court in describing a typical payday loan as follows:

> Although the details vary from person to person as well as from lender to lender, typically a payday loan works as follows. The borrower applies for a small loan and gives the lender a post-dated check in the amount of the loan principal plus a finance charge. Depending on the lender, the finance charge varies from $15 to $33. In return, the lender gives the borrower a loan in cash with payment due in a short period of time, usually two weeks. When the loan becomes due, the borrower either repays the lender in cash the amount of the loan plus the finance charge, or the lender deposits the borrower's check.

*Id.* at 535–36 (quoting *Livingston,* 753 N.E.2d at 574). The market for payday loans "is made up of consumers who have personal checking accounts, but who are stretched to the limit financially. These consumers are not even living paycheck to paycheck, but are borrowing against their next paycheck to meet living expenses." *Id.* (citing *Livingston, id.*).

While payday lending was virtually non-existent as late as 1985, "by 2002 it exploded into an industry with over twenty-five thousand retail outlets nationwide, more than McDonald's, Burger King, Sears, J.C. Penny, and Target stores combined." Peterson at 1111 (citing Howard Karger, "Shortchanged: Life and Debt in the Fringe Economy," 73–74 (2005); Rani Gupta, "High Living Costs Help Perpetuate Poverty," *Palm Beach Post,* Jan. 8, 2006). Such a huge business presence brought about the passage of the aforementioned Small Loans Act in 2002.

■ Even though Payday does not address the actual wording of the Small Loans Act, we will do so. Again, we note that Payday contends that the trial court erred in not awarding the $2,100.00 that represents the 325.89% interest rate applied to the $200 loan made to Defreeuw. In responding to this contention, we initially note that the "Small Loans" statute under which Payday asserts its protection from usury laws, conflicts with both statutory law as developed throughout American jurisprudential history and the common law as stated in *Livingston.* Accordingly, the statute must be strictly construed. *See Bartrom v. Adjustment Bureau, Inc.,* 618 N.E.2d 1, 10 (Ind.1993) (stating that when "the legislature enacts a statute in derogation of the common law, this Court presumes that the legislature is aware of the common law, and does not intend to make any change therein beyond what it declares either in express terms or by unmistakable implication").

■ At the time Payday made a loan to Defreeuw, finance charges on a $200.00 loan were limited to the $25.00 charged by Payday. Ind.Code § 24–4.5–7–201. The statute made no reference to continuing to

assess this original finance charge every two weeks until the loan is paid. Upon the bank's dishonoring of Defreeuw's check, Payday was allowed to charge a fee not to exceed $20.00. Ind.Code § 24-4.5-7-202(1). The Small Loans Act stated that finance charges made on small loans were exempt from both Ind.Code § 24-4.5-3-508, which limited a loan finance charge for supervised loans to 36%, and Ind.Code § 35-45-7, which stated that a person committed loansharking when he contracted to receive an APR exceeding 72%. *See* Ind.Code § 24-4.5-7-411.

Although Payday makes no cogent argument pertaining to the Small Loans Act, we assume that Payday believes that the Small Loans Act frees it from both the usury and loansharking statutes and is license to ignore the historically moral and practical foundations for usury statutes and charge any amount of interest that the so-called payday loan "free market" will bear. In this case, Payday believes that rate to be based upon the transformation of its initial two-week 15% finance charge into an APR of 325.89%. We disagree.

Credit crises are, in large part, the result of poor borrowing choices, limited loan availability, and unconscionable interest charges. In view of these public policy considerations, we do not believe our legislature intended to free lenders to assess the unconscionable interest rate sought by Payday against Defreeuw.

The question then, is how high the APR on a payday loan can rise. The Small Loans Act tells us only that it may exceed 36% and that the charging of greater than 72% will not result in the prosecution of the lender. The Act does not explicitly cap the APR on the loan, but given that it is in derogation of both statutory and common law as recently expressed in *Livingston*, we cannot say that it authorizes what can only be described as an astronomical deviation from established law.

### B. Payday's Contract

■ As we stated above, the small claims court did not rule on Count III of Payday's complaint. However, the court, which is required to rule in numerous payday loan cases, did send a letter to Payday in which it stated that Payday's contract failed to require the payment of interest by the borrower. Specifically, the court stated that "it appears that the only charge contemplated to the parties is one finance charge, which has been expressed by a corresponding annual percentage rate, for purposes of the Truth in Lending Act." Appellant's App. at 68.

Payday does not argue that its contract with Defreeuw explicitly requires her to pay interest. Instead, Payday notes that it is required by the Federal Truth In Lending Act to prominently display the annualized interest rate of the loan as if the finance charge was renewed every two weeks, and that the informational display unambiguously informed Defreeuw that she was agreeing to continually re-pay the finance charge over the course of the loan.

■ When interpreting an unambiguous contract, we give effect to the intentions of the parties as expressed in the four corners of the document. *Art Country Squire, LLC v. Inland Mortgage Corp.*, 745 N.E.2d 885, 889 (Ind.Ct.App.2001). Clear, plain, unambiguous terms are conclusive of that intent. *Id.* We will neither construe clear and unambiguous provisions nor add provisions not agreed upon by the parties. *Id.* The meaning of a contract is to be determined from an examination of all of its provisions, not from a consideration of individual words, phrases, or even paragraphs read alone. *Id.*

The contract between Payday and Defreeuw contains a straightforward section entitled "Promise To Pay," which states:

> For value received, the undersigned ("BORROWER") promises to pay to the order of PAYDAY TODAY, INC. at the address for such LENDER shown above, one payment in the amount of $225.00 on or before Saturday, June 19, 2004, together with the other charges and fee set forth on the REVERSE SIDE of this Agreement (to the extent applicable), all without relief from valuation or appraisement laws. (If more than one person shall be designated as BORROWER, then the term BORROWER shall refer to each such person, jointly and severally).

Appellant's App. at 27.

The "Promise to Pay" is unambiguous, and it does not require Defreeuw to pay any annualized interest rate. The listing of the A.P.R. required by the Truth in Lending Act merely informs Defreeuw that the finance charge she agreed to pay, if annualized, would represent an A.P.R. of an enormous amount. It does not alter or add to the unambiguous "Promise to Pay" section of the contract. Stated simply, if Payday wants to collect interest, it must include that interest as part of the agreement between itself and the payday borrower. Because Payday failed to do so, it cannot recover any interest. Understandably, Payday characterizes this result as a windfall to its borrowers. We note, however, that it is a "windfall" created by the language of Payday's contract.

## CONCLUSION

Payday waived its claimed right to recover for breach of contract when it pled such recovery as an alternative to its recovery for fraud. Waiver notwithstanding, Payday cannot recover under the Small Loans Act or under its contract with Defreeuw. Accordingly, the small claims court did not err when it allowed only recovery of damages for fraud.

Affirmed.

VAIDIK, J., and BRADFORD, J., concur.