Michael NEIDOW, Appellant–
Defendant,

v.

CASH IN A FLASH, INC./MERRILL-
VILLE, Appellee–Plaintiff.

No. 45A03–0505–CV–208.

Court of Appeals of Indiana.

Feb. 6, 2006.

Frederick J. Tom, Merrillville, for Appellant.

J. Philip Goddard, Deputy Director and General Counsel, Indiana Department of Financial Institutions, Indianapolis, for Amicus Curiae.

Edward R. Hall, Merrillville, for Appellee.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE [1]

Appellant–Defendant, Michael Neidow (Neidow), appeals the trial court's judgment awarding Appellee–Plaintiff, Cash in a Flash, Inc. (CIF), treble damages and attorney's fees pursuant to Ind.Code § 26–2–7 et seq. The DFI filed an Amicus Curiae Brief in support of Neidow.

We reverse and remand.

### ISSUE

Neidow raises one issue, which we restate as: Whether the trial court erred in awarding CIF treble damages and attorney's fees pursuant to Ind.Code § 26–2–7 et seq.

### FACTS AND PROCEDURAL HISTORY

On June 6, 2004, Neidow entered into a "Consumer Loan Agreement" with CIF in order to obtain a two-week loan of $200.00. (Appellee's App. p. 36). CIF is an Indiana licensed lender authorized to make "small loans" as promulgated under I.C. § 24–4.5–7–101 et seq. (Appellee's App. p. 2). Under the terms of the agreement with CIF, Neidow was to pay the amount of the loan, plus a $25.00 finance charge, by June 19, 2004. As security for the loan, Neidow presented CIF with a personal check in the amount of $225.00. The check was post-dated for June 19, 2004. On June 21, CIF deposited Neidow's check because he did not pay off the loan by the due date. However, several days later the check was returned to CIF due to insufficient funds in Neidow's account.

On August 11, 2004, Neidow received a final notice in the mail from CIF. On November 11, 2004, Neidow received a collection notice from CIF's attorney, advising Neidow that if he wanted to avoid a lawsuit then he would have to pay $545.00 within ten days of the collection notice. The total amount of $545.00 included the following: $200.00 for the original amount of the loan, $25.00 finance charge, $20.00 returned check fee, and $300.00 for attorney fees. After receiving the collection notice, Neidow attempted to settle the matter with CIF's attorney, but was unsuccessful.

On January 26, 2005, CIF filed its Complaint seeking damages on Count I, fraud on a financial institution, I.C. § 35–43–5–8, and Count II, penalties for stopping payments or permitting dishonor of checks

---

1. On October 25, 2005, we granted the following motions: (1) Appellee's Motion to Strike Appellant's Appendix In Its Entirety, (2) Department of Financial Institution's (DFI) Motion to Appear As Amicus Curiae And Submit Late Amicus Curiae Brief, and (3) DFI's Motion to Correct Amicus Curiae Brief. Per order of this court, DFI was granted ten (10) days to correct their Brief. However, because no corrections were ever made, DFI's Amicus Curiae Brief will be deemed submitted as is.

and drafts, I.C. § 26–2–7 *et seq.* On February 28, 2005, a bench trial was held. During the trial, CIF withdrew Count I of its Complaint, but continued to seek treble damages and attorney's fees under I.C. § 26–2–7 *et seq.* After the close of the evidence, the trial court took the matter under advisement. On March 4, 2005, the trial court ruled in favor of CIF, and found as follows:

> This matter arises out of a bounced check. [CIF] now brings suit pursuant to Ind.Code [§ ] 2[6]–2–7–6.[2] Upon review of the evidence, the [c]ourt finds and concludes that [CIF] is entitled to three times the value of the check (225 × 3 = 675), $500.00 in attorneys fees[ ] and prejudgment interest and bounced check fees totaling $1208.32.

> Moreover, the [c]ourt would note that, pursuant to I.C. [§ ] 2[6]–2–7–6, it does not appear that the court has any discretion regarding the treble damage amount.

> JUDGMENT: FOR [CIF] AND AGAINST [NEIDOW] IN THE AMOUNT OF $1208.32 plus court costs and post-judgment interest.

> \* \* \*

(Appellee's App. p. 4).

Neidow now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION
### I. *Standard of Review*

■ Neidow contends that the trial court's judgment was clearly erroneous. Specifically, Neidow argues that CIF cannot be awarded treble damages and attorney's fees under Ind.Code § 26–2–7 *et seq.* without first proving fraud pursuant to

I.C. § 24–4.5–7–409(2). In this case, the trial court entered a brief finding and conclusion to support its judgment. When the trial court enters findings of fact and conclusions of law, we apply the following two-tiered standard of review: whether the evidence supports the findings and whether the findings support the judgment. *Clark v. Crowe*, 778 N.E.2d 835, 839 (Ind. Ct.App.2002). The trial court's findings and conclusions will be set aside only if they are clearly erroneous, that is, if the record contains no facts or inferences supporting them. *Id.* at 839–40. A judgment is clearly erroneous when a review of the record leaves us with a firm conviction that a mistake has been made. *Id.* at 840. We neither reweigh the evidence nor assess the credibility of witnesses, but consider only the evidence most favorable to the judgment. *Id.*

■ In this case, the trial court's judgment turns on the interpretation of I.C. §§ 24–4.5–7–409(2) and 26–2–7 *et seq.* The interpretation of a statute is a question of law reserved for the courts. *State v. Rans*, 739 N.E.2d 164, 166 (Ind.Ct. App.2000), *trans. denied.* Appellate courts review questions of law under a *de novo* standard and owe no deference to a trial court's legal conclusions. *Id.* If the language of a statute is clear and unambiguous, it is not subject to judicial interpretation. *Montgomery v. Estate of Montgomery*, 677 N.E.2d 571, 574 (Ind. Ct.App.1997). However, when the language is susceptible to more than one construction, we must construe the statute to determine the apparent legislative intent. *Id.* In this respect, the task of appellate courts has been summarized as follows:

---

**2.** In its Judgment, the trial court cites and relies upon Ind.Code § 25–2–7–6. However, the correct Title is 26.

We ascertain and implement legislative intent by "giving effect to the ordinary and plain meaning of the language used in the statute." The statute is examined and interpreted as a whole and the language itself is scrutinized, including the grammatical structure of the clause or sentence at issue. Within this analysis, we give words their common and ordinary meaning, without "overemphasizing a strict literal or selective reading of individual words."

*Clifft v. Ind. Dep't of State Revenue,* 660 N.E.2d 310, 316 (Ind.1995) (internal citations omitted), *remanded and affirmed on other grounds by Clifft v. Ind. Dep't of State Revenue,* 748 N.E.2d 449 (Ind.Tax 2001).

## II. *Bad Checks and the Small Loan Act*

The question before us, which appears to be one of first impression in Indiana, requires us to determine whether small loan lenders, *i.e.,* payday lenders, can receive treble damages and/or attorney's fees for a bad check under I.C. § 26–2–7 *et seq.* without first proving fraud pursuant to the Small Loan Act. In 1993, our legislature enacted I.C. § 26–2–7 *et seq.,* which has commonly been referred to as the "Indiana Bad Check Statute." *See Jump v. ACP Enterprises, Inc.,* 224 F.Supp.2d. 1216, 1218 (N.D.Ind.2002). The purpose of the statute is to provide penalties for stopping payments or permitting dishonor of checks and drafts. I.C. § 26–2–7. Specifically, I.C. § 26–2–7–4 provides that:

[A] person found liable under other applicable law is liable under this chapter to the holder of a check if the person executed and delivered the check to another person drawn on or payable at a financial institution and the person does either of the following:

(1) Without valid legal cause stops payment on the check.

(2) Allows the check to be dishonored by a financial institution because of any of the following:

(A) Lack of funds.

(B) Failure to have an account.

(C) Lack of an authorized signature of the drawer or a necessary endorser.

I.C. § 26–2–7–5 details the extent of liability a person is subject to for violating this chapter, and provides in pertinent part:

A person liable under section 4 of this chapter is also liable for all of the following:

(1) Interest at the rate of eighteen percent (18%) per annum on the face amount of the check from the date of the check's execution until payment is made in full.

(2) Court costs incurred in prosecuting an action that may be brought by the holder to collect on the check.

(3) Reasonable attorney's fees incurred by the holder if the responsibility for collection is referred to an attorney who is not a salaried employee of the holder. If legal action is filed to effect collection and the collection on the check is referred to an attorney who is not a salaried employee of the holder, the holder of the check is entitled to minimum attorney's fees of not less than one hundred dollars ($100).

. . .

Further, I.C. § 26–2–7–6 imposes additional liability for continued nonpayment of a bad check. Specifically, section 6(b) states:

If a person liable under this chapter does not pay to the holder the full amount of the check not more than thirty (30) days after the certified mailing of written notice that the check has not

been paid, the person is liable for, and the court shall award judgment for, the following, whichever applies:

(1) If the face amount of the check is not greater than two hundred fifty dollars ($250), three (3) times the face amount of the check.

. . .

We must also look to the Small Loan Act (SLA), which our legislature enacted in 2002 to legalize and regulate the small loan lending industry. *See* I.C. § 24–4.5–7 *et seq.* A "Small Loan" means a loan:

(a) with a principal loan amount that is at least fifty dollars ($50) and not more than five hundred dollars ($500); and

(b) in which the lender holds the borrower's check or receives the borrower's written authorization to debit the borrower's account under an agreement, either express or implied, for a specific period[3] before the lender:

    (i) offers the check for deposit or presentment; or

    (ii) exercises the authorization to debit the borrower's account.

I.C. § 24–4.5–7–104. The SLA also provides a section discussing penalties that can be enforced upon a borrower:

I.C. § 24–4.5–7–409(2) (emphases added) states:

The following apply to small loans only when a check or an authorization to debit a borrower's account is used to *defraud* another person:

(a) IC 26–1–3.1–502.5 (surcharge after dishonor).

(b) *IC 26–2–7 (penalties for stopping payments or permitting dishonor of checks and drafts ).*

(c) IC 34–4–30 (before its repeal)

(d) IC 34–24–3 (treble damages allowed in certain civil actions by crime victims).

(e) IC 35–43–5 (forgery, fraud, and other deceptions).

(f) IC 24–4.5–3–404 (attorney's fees) does not apply to a small loan.

■ Our review of the record reveals that CIF filed a complaint against Neidow alleging in Count I, fraud on a financial institution, and Count II, violation of I.C. § 26–2–7 *et seq.* However, the record shows that during trial CIF withdrew Count I because they could not prove fraud, but nevertheless continued to seek treble damages and attorney's fees under I.C. § 26–2–7 *et seq.* on the basis that Neidow's bad check and subsequent failure to repay the debt constituted a breach of contract. The trial court agreed with CIF, and held that CIF was entitled to treble damages and attorney's fees pursuant to I.C. § 26–2–7 *et seq.* Neidow now argues that the trial court's ruling is clearly erroneous and contrary to law because CIF failed to prove fraud as required by I.C. § 24–4.5–7–409(2) before seeking any remedy under Ind.Code § 26–2–7. We agree.

There is no dispute in this case that CIF is a payday lender in the business of making small loans pursuant to the SLA, and CIF's $200 loan to Neidow is a "small loan" as defined by I.C. § 24–4.5–7–104. Pursuant to I.C. § 24–4.5–7–409(2)(a)–(f), our legislature has provided several penalties that can be enforced against the borrower of a small loan. However, this statute clearly provides that before any remedies can be sought, the payday lender must prove that the borrower defraud-

---

**3.** Ind.Code § 24–4.5–7–401 provides that "A small loan may not be made for a term of less than fourteen (14) days."

ed the lender in order to obtain the small loan. *See id.* Although the legislature did not include the elements necessary to prove fraud, a definition, or a reference to the fraud statute, the meaning of the word "defraud" can be found in any English language legal dictionary.

Here, the record clearly reveals, and CIF admits in their brief, that they could not prove that Neidow intended to defraud them. CIF argues, however, that the list of remedies provided in I.C. § 24–4.5–7–409(2) is not exclusive. Therefore, CIF maintains that they can seek treble damages and attorney's fees against Neidow for breach of contract as a result of his bad check under I.C. § 26–2–7 *et seq.* without first proving fraud. In support of their argument, CIF directs us to Burns Indiana Statutes Annotated version of I.C. § 24–4.5–7–409, where the title of the section reads "Applicability of other statutory provisions—Penalty for violations of chapter—Equitable relief—Remedies not exclusive." However, the official version of I.C. § 24–4.5–7–409 on *www.in.gov* lists the title of section 409 as, "Restrictions, penalties, and enforcement." Regardless of the title, the text of section 409 is the same and there is no language indicating that the remedies provided under the statute are non-exclusive to the lender. Further, we do not believe that the legislature intended for a party to be able to recover treble damages and attorney's fees under I.C. § 26–2–7 without first proving fraud as specifically provided by I.C. § 24–4.5–7–409(2). To allow such a practice would render I.C. § 24–4.5–7–409(2) irrelevant. Accordingly, we hold that in order for a small loan lender to collect treble damages and attorney's fees against a borrower under I.C. § 26–2–7, the small loan lender must prove fraud on the part of the borrower as required by I.C. § 24–4.5–7–409(2). Thus, because CIF failed to prove fraud, the trial court erred in awarding

CIF treble damages and attorney's fees pursuant to I.C. § 26–2–7 *et seq.* However, CIF can still collect from Neidow the $200.00 loan, $25.00 finance charge, returned check fee, and court costs.

## CONCLUSION

Based on the foregoing, we conclude that the trial court erred in awarding CIF treble damages and attorney's fees. Additionally, the trial court's judgment should be modified to reflect a judgment in favor of CIF and against Neidow for the following: $200.00 loan, $25.00 finance charge, returned check fee, and court costs.

Reversed and remanded with instructions to modify the judgment accordingly.

BAKER, J., and MATHIAS, J., concur.