In the Matter of the PATERNITY OF B.W.M. a Child Born Out of Wedlock, By Next Friend, Tracey Lynn Miller, (n/k/a Crow), Appellant–Petitioner,

v.

Michael J. BRADLEY, Appellee–Respondent.

No. 50A03–0410–JV–477.

Court of Appeals of Indiana.

May 10, 2005.

Transfer Denied Aug. 11, 2005.

Steve Carter, Attorney General of Indiana, Frances H. Barrow, Deputy Attorney General Indianapolis, IN, Attorneys for Appellant.

David P. Besinger, Holmes & Walter, LLP Plymouth, IN, Attorneys for Appellee.

## OPINION

BAKER, Judge.

Appellant-petitioner B.W.M., by next friend Tracey Lynn Miller, n/k/a Crow, appeals the trial court's grant of appellee-respondent Michael Bradley's motion to dismiss this paternity action. Specifically, B.W.M. asserts that the trial court erred in dismissing the paternity action on the grounds that John Miller was the child's father for twelve years as established by the birth certificate and decree of marriage dissolution. Finding that the dismissal of this action violates the public policy of correctly identifying parents and their offspring, we reverse the judgment of the trial court and remand for proceedings consistent with this opinion.

### FACTS

Tracey and John were married on August 10, 1990. B.W.M. was born on December 21, 1990. The Marshall County Health Department Record of Birth indicates that B.W.M.'s parents are John and Tracey. On June 18, 1999, a dissolution of marriage decree was entered in Lake Superior Court dissolving the Miller's marriage. The decree also awarded custody of B.W.M. and S.A.M., another child born during the marriage, to Tracey and or-

dered John to pay child support in the amount of $97 per week.

On October 2, 2001, John filed a Petition to Vacate Child Support Order Pending DNA Testing, or in the Alternative, to Modify Child Support.[1] The trial court held a hearing on the matter on February 21, 2002 and found that DNA Testing determined that John was not B.W.M.'s biological father. The trial court thus vacated John's support order with regard to B.W.M.

On April 22, 2004, B.W.M. filed his Petition to Establish Paternity against Bradley through the Marshall County Title IV Prosecutor. Bradley filed a motion to dismiss on May 24, 2004, arguing that "[p]aternity of said child was established January 9, 1991 as per the attached certificate of birth...." Appellant's App. p. 8. On August 9 and 23, 2004, the trial court conducted hearings on the motion. On September 9, 2004, the trial court granted Bradley's motion to dismiss, finding that John was the legal father of B.W.M. for the first twelve years of his life and that Bradley had been "foreclosed from the opportunity to ever have any meaningful contact with this child while growing up, and [Bradley is] now resistant to any action to have his paternity legally established...." Appellant's App. p. 5. B.W.M. now appeals.

### DISCUSSION AND DECISION

B.W.M. alleges that the trial court erred in granting Bradley's motion to dismiss. Specifically, he contends that the dismissal of his paternity action violates public policy that favors the establishment of paternity for children born out of wedlock.

Generally, decisions regarding child support rest within the sound discretion of the trial court. *Painter v. Painter,* 773 N.E.2d 281, 283 (Ind.Ct.App.2002). We will reverse a trial court's decision in child support matters only for an abuse of discretion or if the trial court's determination is contrary to law. *Id.*

A child under the age of eighteen may file a paternity action through a guardian, guardian ad litem, or next friend. Ind. Code § 31–14–5–2(a). Our supreme court has held that "[a] child born to a married woman, who is fathered by a man other than her husband is deemed to be a 'child born out of wedlock.' " *K.S. v. R.S.,* 669 N.E.2d 399, 402 (Ind.1996). "The general assembly favors the public policy of establishing paternity under this article of a child born out of wedlock." Ind.Code § 31–14–1–1. Our supreme court noted in *In re S.R.I.,* 602 N.E.2d 1014, 1016 (Ind. 1992):

> [S]tability and finality are significant objectives to be served when deciding the status of children of divorce. On the other hand, there is a substantial public policy in correctly identifying parents and their offspring. Proper identification of parents and child should prove to be in the best interests of the child for medical or psychological reasons. It also plays a role in the just determination of child support; we have already declared that public policy disfavors a support order against a man who is not the child's father.

Here, the trial court was aware that John had recently been proven not to be B.W.M.'s father but still found that it was a mistake to allow B.W.M. the chance to prove that Bradley is his father:

---

1. The record does not disclose whether John requested a modification of support for both children or just for B.W.M.

Inasmuch as this child is now fourteen (14) years of age, was the legal child of John William Miller for the first twelve (12) years of his life, and the Respondent herein being foreclosed from the opportunity to ever have any meaningful contact with this child while growing up, and this Respondent now resistant to any action to have his paternity legally established, the Court now finds that the Respondent's Motion To Dismiss ought to be and is hereby GRANTED.

Appellant's App. p. 5. This order has created a situation in which B.W.M.'s legal father was taken away from him, but he is powerless to establish who his biological father may be. This runs completely contrary to our established public policy of correctly identifying parents and their offspring.

Although B.W.M. has never met Bradley, he "wants to find out who his Dad is so he can get to know him." Tr. p. 6. While it is true that there will be some instability if it is established that Bradley—a virtual stranger—is B.W.M.'s father, we see no reason that a child should be rendered permanently fatherless through no fault of his own when he could have the chance to prove who his father is. We have always been able to tell with absolute certainty who is the mother of a child. With the state of technology today, we can establish to a near certainty who is the father. Even if B.W.M. and Bradley never establish an emotional connection, B.W.M. is entitled to financial support from his biological father. *See* Ind.Code § 31–14–1–1, et seq. Thus, we hold that it was error for the trial court to dismiss this paternity action without giving B.W.M. the chance to establish whether Bradley is his father.

In reaching this holding, we are mindful of the fact that both our supreme court and this court have previously looked with displeasure on parents attacking their paternity through motions to modify child support orders under Indiana Trial Rule 60. *See Fairrow v. Fairrow,* 559 N.E.2d 597, 600 (Ind.1990) (strongly discouraging relitigation of support issues through T.R. 60(B)(8) motions in the absence of highly unusual evidence such as the discovery that one is not the parent of a child through ordinary medical care); *Gipson v. Gipson,* 644 N.E.2d 876, 877 (Ind.1994); *Russell v. Russell,* 682 N.E.2d 513, 518 (Ind.1997); *Ohning v. Driskill,* 739 N.E.2d 161, 164 (Ind.Ct.App.2000). Although we strongly disapprove of John's action in filing the petition to vacate his child support obligation and the trial court's action in granting that petition, that is not the question before us. Tracey did not appeal that decision, and instead decided to pursue a paternity action against Bradley. There is no reason that B.W.M. should be made to suffer for the poor decision making of the adults in his life. Now that the courts have rendered B.W.M. a fatherless child, he should have the chance to prove who his biological father is.

The judgment of the trial court is reversed and remanded for proceedings consistent with this opinion.

KIRSCH, C.J., and BARNES, J., concur.