**PAYDAY TODAY, INC.,**
**Appellant–Plaintiff,**

v.

**Princess McCULLOUGH & Henry McCullough, Appellees–Defendants.**

**No. 71A03–0507–CV–310.**

Court of Appeals of Indiana.

Feb. 6, 2006.

Edward R. Hall, Merrillville, for Appellant.

Princess McCullough, Henry McCullough, South Bend, Appellee, Pro Se.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE [1]

Appellant–Plaintiff, Payday Today, Inc. (Payday), appeals the trial court's denial of their claim for treble damages against Appellees–Defendants, Henry McCullough (Henry) and Princess McCullough (Princess), (collectively, the McCullough's).

We affirm in part and reverse in part.

### ISSUE

Payday raises three issues on appeal, one of which we find dispositive and restate as follows: Whether the trial court erred in denying Payday's claim for treble damages.

Additionally, we also raise the following issue *sua sponte:* Whether the trial court erred in awarding Payday attorney's fees and interest pursuant to Ind.Code § 26–2–7 *et seq.*

### FACTS AND PROCEDURAL HISTORY [2]

Payday is a corporation licensed to make "small loans" as promulgated under I.C. § 24–4.5–7–101 *et seq.*[3] On January 21, 2004, Henry entered the Payday store, located in Mishawaka, Indiana, and completed a "Small Loan Application" in order to obtain a two-week loan of $200.00. (Appellant's App. p. 55). On the application Henry noted that he did not have any outstanding small loans, and that he received a net income of $1800.00 per month while employed at Ivy Tech State College in Elkhart, Indiana. In conjunction with the application, Henry signed a "Consumer Loan Agreement." (Appellant's App. p. 11). Under the terms of the agreement, Payday was to loan Henry $200.00, and in return, Henry was to pay the amount of the loan, plus a $25.00 finance charge to Payday, by February 4, 2004. As security for the loan, Henry presented Payday with a personal check in the amount of $225.00. The check was post-dated for February 4, 2004. On February 4, 2004, Payday attempted to cash Henry's check, however, the check was returned to Payday because Henry had placed a stop payment order on the check.[4]

---

1. Although the record is unclear, it appears that the trial court consolidated *Payday Today, Inc. v. Princess McCullough*, Cause No. 71D06–0409–SC–10736, and *Payday Today, Inc. v. Henry McCullough*, Cause No. 71D06–0409–SC–10737.

2. On November 14, 2005, we Granted Appellant's Motion to Strike Appellees Appendix. Further, we decline to consider Appellee's Brief as it does not address the contentions raised in the Appellant's Brief and fails to conform to numerous provisions of Indiana Appellate Rule 46. It is well settled that *pro se* litigants are held to the same standard as are licensed lawyers. *Goossens v. Goossens,* 829 N.E.2d 36, 43 (Ind.Ct.App.2005).

3. A "small loan" means a loan:
   (a) with a principal loan amount that is at least fifty dollars ($50) and not more than five hundred dollars ($500); and
   (b) in which the lender holds the borrower's check or receives the borrower's written authorization to debit the borrower's account under an agreement, either express or implied, for a specific period of time before the lender:
   (i) offers the check for deposit or presentment; or
   (ii) exercises the authorization to debit the borrower's account.
   Further, I.C. § 24–4.5–7–401 provides that "A small loan may not be made for a term less than fourteen days."

4. Appellant claims that page 8 of their Appendix supports that Henry issued a stop payment order on his check. However, nowhere on page 8 of Appellant's Appendix does it state that Henry issued a stop payment on his check. Nevertheless, after combing through the record, the above referenced statement does find support in the trial court's Judgment. (Appellant's App. p. 15). We advise Appellant that the facts need to "be supported by page references to the Record on Appeal or

On January 23, 2004, Princess entered Payday and completed a "Small Loan Application" in order to obtain a two-week loan of $200.00. (Appellant's App. p. 59). On the application, Princess noted in pertinent part, that she did not have any outstanding small loans, and that she received a net income of $1800.00 per month.[5] In conjunction with the application, Princess signed a "Consumer Loan Agreement." (Appellant's App. p. 11). Under the terms of the agreement, Payday was to loan Princess $200.00, and in return, Princess was to pay the amount of the loan, plus a $25.00 finance charge, to Payday, by February 6, 2004. As security for the loan, Princess presented Payday with a personal check in the amount of $225.00. The check was post-dated for February 6, 2004. On February 6, 2004, Payday attempted to cash Princess' check, however, the check was returned to Payday because Princess had placed a stop payment order on the check.

On August 9, 2004, Payday sent each of the McCullough's a letter explaining that they had failed to pay their debts to Payday and notifying them that if the debts were not paid within ten days from the date of the letters, the McCullough's would be subject to civil penalties. The McCullough's did not respond to the letters. Therefore, on September 1, 2004, Payday filed a complaint for damages against both Henry and Princess alleging fraud on a financial institution pursuant to I.C. § 35–43–5–8. In addition to the original amount of the loan, interest, and late fees, Payday sought treble damages pursuant to I.C. § 34–24–3–1. On November 29, 2004, a bench trial was held. After the close of the evidence, the trial court entered judgment against Henry and ordered as follows:

> Under I.C. [§ ] 34–24–3–1 [Payday] had the burden of proving by the greater weight of the evidence, that [Henry] violated I.C. [§ ] 35–43–5–8, one element of which is that he acted "knowingly." [Payday] was unable to sustain that burden.
>
> Since, however, [Henry] ordered a stop payment on the check in issue, he is liable under I.C. [§ ] 26–2–7–1 et seq. for the following: [face amount of the check ($225.00), attorney's fee ($250.00), interest @ 18% ($34.00), and bank and late fee ($25.00), for a total of $534.00.]

(Appellant's App. pp. 15–16). Additionally, the trial court entered judgment against Princess and ordered:

> Under I.C. [§ ] 34–24–3–1 [Payday] had the burden of proving by the greater weight of the evidence, that [Princess] violated I.C. [§ ] 35–43–5–8, one element of which is that she acted "knowingly." [Payday] was unable to sustain that burden.
>
> Since, however, [Princess] ordered a stop payment on the check in issue, she is liable under I.C. [§ ] 26–2–7–1 et seq. for the following: [face amount of the check ($225.00), attorney's fee ($250.00), interest @ 18% ($34.00), and bank and late fee ($25.00), for a total of $534.00.]

(Appellant's App. pp. 17–18).

Payday now appeals. Additional facts will be provided as necessary.

---

Appendix ...." *See* Ind.Appellate Rule 46(A)(6)(a).

**5.** In the Statement of Facts, Appellant cites to page 59 of the Appellant's Appendix to support its statement that Princess received her monthly income from a government pension. *See* (Appellant's Brief p. 8). However, on the "Small Loan Application," Princess did not specify where her monthly income was coming from. (Appellant's App. p. 59). Again, we advise Appellant to support the facts with citation to the Record on Appeal or Appendix. *See* App.R. 46(A)(6)(a).

## DISCUSSION AND DECISION
### I.  Treble Damages

On appeal, Payday contends that it was error for the trial court not to award them treble damages.  Specifically, Payday argues that because the McCullough's stopped payment on their checks, they committed fraud in violation of I.C. § 35–43–5–8, and thus Payday is entitled to treble damages pursuant to I.C. § 34–24–3–1.  We disagree.

■■■■ When the trial court enters findings of fact and conclusions thereon, we apply the following two-tiered standard of review: whether the evidence supports the findings and whether the findings support the judgment.  *Clark v. Crowe*, 778 N.E.2d 835, 839 (Ind.Ct.App.2002).  The trial court's findings and conclusions will be set aside only if they are clearly erroneous, that is, if the record contains no facts or inferences supporting them.  *Id.* at 839–40.  A judgment is clearly erroneous when a review of the record leaves us with a firm conviction that a mistake has been made.  *Id.* at 840.  We neither reweigh the evidence nor assess the credibility of witnesses, but consider only the evidence most favorable to the judgment.  *Id.*

I.C. § 34–24–3–1 (emphasis added) provides in pertinent part as follows:

If a person suffers a pecuniary loss as a result of a violation of [I.C. § ] *35–43*, [I.C. § ] 35–42–3–3, [I.C. § ] 35–42–3–4, or [I.C. § ] 35–45–9, the person may bring a civil action against the person who caused the loss for the following:

  (1) An amount not to exceed three (3) times the actual damage of the person suffering the loss.
  (2) The costs of the action.
  (3) A reasonable attorney's fee.
  . . .

To support their claim for treble damages under I.C. § 34–24–3–1, Payday asserts

that the McCullough's committed fraud on them in violation of I.C. § 35–43–5–8, which provides in pertinent part:

  (a) A person who knowingly executes, or attempts to execute, a scheme or artifice:

  . . .

  (2) to obtain any of the money, funds, credits, assets, securities, or other property owned by or under the custody or control of a state or federally chartered or federally insured financial institution by means of false or fraudulent pretenses, representations, or promises; commits a Class C felony.

  . . .

■■■ Payday urges us to find that the action of stopping payment on a check constitutes fraud on a financial institution.  However, I.C. § 35–43–5–8 specifically requires that any fraudulent activity be done knowingly at the time of execution.  Here, Payday fails to present, and we do not find, any evidence that the McCulloughs, in order to obtain loans from Payday, executed their checks "knowing" that they were going to stop payment on them.  *See id.*  Accordingly, the trial court's decision to deny treble damages is not clearly erroneous.

### II.  Attorney's Fees and Interest

■■■ Next, we raise, *sua sponte*, the issue of whether the trial court erred in awarding Payday attorney's fees and interest pursuant to I.C. § 26–2–7 *et seq.*  In so doing, we must interpret the language of I.C. §§ 26–2–7 *et seq.* and 24–4.5–7–409(2).  The interpretation of a statute is a question of law reserved for the courts.  *State v. Rans*, 739 N.E.2d 164, 166 (Ind.Ct.App.2000), *trans. denied.*  Appellate courts review questions of law under a *de novo* standard and owe no defer-

ence to a trial court's legal conclusions. *Id.* If the language of a statute is clear and unambiguous, it is not subject to judicial interpretation. *Montgomery v. Estate of Montgomery,* 677 N.E.2d 571, 574 (Ind.Ct. App.1997). However, when the language is susceptible to more than one construction, we must construe the statute to determine the apparent legislative intent. *Id.* In this respect, the task of appellate courts has been summarized as follows:

> We ascertain and implement legislative intent by "giving effect to the ordinary and plain meaning of the language used in the statute." The statute is examined and interpreted as a whole and the language itself is scrutinized, including the grammatical structure of the clause or sentence at issue. Within this analysis, we give words their common and ordinary meaning, without "overemphasizing a strict literal or selective reading of individual words."

*Clifft v. Ind. Dep't of State Revenue,* 660 N.E.2d 310, 316 (Ind.1995) (internal citations omitted), *remanded and affirmed on other grounds by Clifft v. Ind. Dep't of State Revenue,* 748 N.E.2d 449 (Ind.Tax 2001).

In 1993 our legislature enacted I.C. § 26–2–7 for the purpose of providing penalties for stopping payments on checks or permitting dishonor of checks and drafts. Specifically, I.C. § 26–2–7–4 (emphasis added) provides:

> [A] person found liable *under other applicable law* is liable under this chapter to the holder of a check if the person executed and delivered the check to another person drawn on or payable at a financial institution and the person does either of the following:
>
> (1) Without valid legal cause stops payment on the check.
>
> . . .

I.C. § 26–2–7–5 (emphases added) details the extent of liability a person is subject to for violating section 4, and provides in pertinent part:

> A person liable under section 4 of this chapter is also liable for all of the following:
>
> (1) *Interest at the rate of eighteen percent (18%)* per annum on the face amount of the check from the date of the check's execution until payment is made in full.
>
> . . .
>
> (3) *Reasonable attorney's fees* incurred by the holder if the responsibility for collection is referred to an attorney who is not a salaried employee of the holder. If legal action is filed to effect collection and the collection on the check is referred to an attorney who is not a salaried employee of the holder, the holder of the check is entitled to minimum attorney's fees of not less than one hundred dollars ($100).
>
> . . .

Additionally, since the loans in this case are "small loans," we must also look to the Small Loan Act (SLA), which our legislature enacted in 2002 to legalize and regulate the small loan lending industry. *See* I.C. § 24–4.5–7 *et seq.* Of particular importance to this case is section 409(2) because, among other things, it specifies what remedies are available against small loan borrowers for stopping payment on a check. Specifically, section 409(2) (emphases added) states:

> The following apply to small loans only when a check or an authorization to debit a borrower's account is used to *defraud* another person:
>
> (a) IC 26–1–3.1–502.5 (surcharge after dishonor).

(b) *IC 26–2–7 (penalties for stopping payments or permitting dishonor of checks and drafts).*

(c) IC 34–4–30 (before its repeal)

(d) IC 34–24–3 (treble damages allowed in certain civil actions by crime victims).

(e) IC 35–43–5 (forgery, fraud, and other deceptions).

(f) IC 24–4.5–3–404 (attorney's fees) does not apply to a small loan.

Here, the trial court awarded Payday attorney's fees and interest pursuant to I.C. § 26–2–7 *et seq.* because the McCullough's issued stop payment orders on their checks. However, in construing chapter 7 it is clear that before a person is found liable under section 4, they must be " found liable under other applicable law." *See* I.C. § 26–2–7–4. Therefore, it follows that a person cannot be assessed any of the penalties afforded in section 5 without first being found liable under section 4. *See* I.C. § 26–2–7–5. In this case, the trial court found the McCullough's liable under I.C. § 26–2–7–4 without first finding them liable under "other applicable law." As such, the trial court's decision is clearly erroneous.

Furthermore, as a matter of procedure, in addition to complying with the rules set forth in I.C. § 26–2–7 *et seq.*, the penalties listed in I.C. § 26–2–7 *et seq.* cannot be enforced upon a small loan borrower unless the lender proves and the trial court finds, that the borrower "defrauded" the lender through the use of a check or an authorization to debit the borrower's account. *See I.C.* § 24–4.5–7–409(2). Although our legislature did not include the elements necessary to prove fraud, a definition, or a reference to the fraud statute, we can look to common law for guidance. To successfully sustain an action for common law fraud, a party must prove five essential elements: (1) a material misrepresentation, (2) of past or existing facts, (3) the falsity of the representation, (4) the representation was made with knowledge or reckless ignorance of its falsity, (5) and detrimental reliance on the representations. *AutoXchange.com, Inc. v. Dreyer and Reinbold, Inc.,* 816 N.E.2d 40, 51 (Ind.Ct.App.2004). Accordingly, we hold that a small loan lender must prove common law fraud in order to seek the penalties listed in I.C. § 24–4.5–7–409(2).

## CONCLUSION

Based on the foregoing, we find (1) that the trial court did not err in denying Payday's claim for treble damages, and (2) the trial court erred in awarding Payday attorney's fees and interest pursuant to I.C. § 26–2–7 *et seq.*

Affirmed in part and reversed in part.

BAKER, J., and MATHIAS, J., concur.