**CASH IN A FLASH, INC.,**
**Appellant–Plaintiff,**

v.

**Henry McCULLOUGH, Appellee–**
**Defendant.**

**No. 71A03–0510–CV–482.**

Court of Appeals of Indiana.

Sept. 8, 2006.

---

Edward R. Hall, Merrillville, IN, Attorney for Appellant.

Henry McCullough, South Bend, IN, Appellee Pro Se.

## OPINION

BAKER, Judge.

Appellant-plaintiff Cash in a Flash, Inc. (CIF), appeals from the trial court's judgment denying CIF statutory attorney fees and treble damages following appellant-defendant Henry McCullough's failure to repay a small, or "payday," loan in a timely fashion.[1] Finding that CIF failed

---

1. CIF also argues in the alternative that it is entitled to contractual damages arising from McCullough's breach of contract. Because the loan agreement herein provides for an Annual Percentage Rate of 268.38%, CIF contends that it is now entitled to over $2000—comprised of the loan, finance charge, dishonored check charge, default charge, and

to prove that McCullough acted fraudulently, we affirm the judgment of the trial court.

## FACTS

On January 16, 2004, McCullough executed a contract with CIF, located in Mishawaka, to obtain a short-term small loan. Specifically, McCullough obtained a $200 loan for a two-week period. CIF imposed a $25-dollar finance charge on the loan, and the contract provided that the loan's annual percentage rate (APR) was to be 268.38%. Consistent with CIF's practices, McCullough presented CIF with a post-dated personal check in the amount of $225—comprising the principal plus the finance charge—as security for the loan. McCullough agreed that, within two weeks of receiving the loan, he would either repay the loan to CIF or ensure that sufficient funds were placed into his bank account so that the post-dated check would cover the loan.

On February 2, 2004, CIF attempted to cash McCullough's check, but on February 10, 2004, the bank returned the check for insufficient funds. At some point, McCullough contacted CIF's manager to inquire about arranging a payment plan. On November 4, 2004, the manager informed McCullough that CIF could not accept partial payments but that McCullough could contact CIF's attorney because "they will take payments." Appellant's App. p. 76.

On November 11, 2004, CIF's attorney sent McCullough a letter informing him that CIF was prepared to initiate legal action against McCullough if he did not take certain steps, including repayment of the loan, a returned check fee, and attorney fees of $300. *Id.* p. 75. After receiving the letter, on December 12, 2004, McCullough remitted a $25 payment to CIF's attorney. On January 19, 2005, he remitted a second $25 payment to CIF's attorney. On February 11, 2005, CIF filed the instant complaint against McCullough, seeking statutory treble damages and attorney fees based upon McCullough's alleged fraud. McCullough stopped making payments to CIF after it instituted this lawsuit.

On August 11, 2005, following a hearing, the trial court entered judgment in favor of CIF but refused to award treble damages or attorney fees. Thus, the trial court ordered McCullough to pay $220.99 plus court costs[2] to CIF. CIF now appeals.

## DISCUSSION AND DECISION

### I. Payday Lending in Indiana

Our Supreme Court described a typical payday loan as follows:

> Although the details vary from person to person as well as from lender to lender, typically a payday loan works as follows. The borrower applies for a small loan and gives the lender a post-dated check

accrued interest—on its initial $200 loan to McCullough. But in its complaint against McCullough, CIF included two counts—Count I, defrauding a financial institution, and Count II, penalties for permitting the dishonor of checks and drafts. Appellant's App. p. 15. Thus, CIF did not bring a breach of contract claim against McCullough, nor did it argue such a theory before the trial court. Consequently, it has waived the argument and we will not consider it. *See, e.g., Stainbrook v. Low,* 842 N.E.2d 386, 396 (Ind.Ct.App.

2006) (holding that issues raised for the first time on appeal are waived), *trans. denied.*

2. Although CIF complains—but does not appeal from—the trial court's calculation of the amount owed by McCullough because it was less than the face value of the check, we conclude that the trial court properly subtracted $50 from the amount due, representing the two $25 payments McCullough already made to CIF on this loan.

in the amount of the loan principal plus a finance charge. Depending on the lender, the finance charge varies from $15 to $33. In return, the lender gives the borrower a loan in cash with payment due in a short period of time, usually two weeks. When the loan becomes due, the borrower either repays the lender in cash the amount of the loan plus the finance charge, or the lender deposits the borrower's check. If the borrower lacks sufficient funds to pay the loan when due, then the borrower may obtain a new loan for another two weeks incurring another finance charge. *Livingston v. Fast Cash USA, Inc.*, 753 N.E.2d 572, 574 (Ind.2001), superseded by statute in 2002. Both the lender and the borrower know that sufficient funds to cover the check are not available when the check is tendered. The lender agrees to hold the check until the consumer's next payday, usually up to two weeks. At that point, the consumer can either redeem the check with cash or a money order or permit the check to be deposited. Jean Ann Fox, *The Growth of Legal Loan Sharking: A Report on the Payday Loan Industry*, available at htt p://www.in.gov/dfi/legal/paydaylend/paydayloanrpt.htm (last visited July 24, 2006).

When payday loans were first offered in the mid–1990s, most state usury or small loan laws made these transactions illegal. By labeling the transaction as check cashing rather than lending, companies sought to avoid credit laws. A 14–day payday loan with a $15 fee costs 391% APR, compared to the typical state small loan interest cap of up to 36% APR, the typical rate for a secured credit card of 24%, and overdraft protection on a checking account of 18 to 24% plus a small one-time fee. *Id.*

The market for payday loans "is made up of consumers who have personal checking accounts, but who are stretched to the limit financially. These consumers are not even living paycheck to paycheck, but are borrowing against their next paycheck to meet living expenses." *Id.*

The first payday lender was licensed in Indiana in the latter part of 1994. As it became aware of these lending practices, Indiana joined other jurisdictions in examining whether these practices violated state usury laws. The Indiana Department of Financial Institutions undertook a statewide audit of payday lending practices, which culminated in its request for a formal Attorney General opinion on this issue. The Attorney General concluded that " 'lenders violate Indiana law when they offer supervised loans having finance charges that exceed the [APRs] set out in Indiana's consumer credit code.... A transaction is void and violates Indiana's loansharking statute if the lender charges an interest rate greater than twice the rate authorized for finance charges in the consumer credit code.' " DFI Amicus Brief, 7–8, *available* at http://www.in.gov/dfi/legal/paydaylend/Amicus—Brief.pdf (last visited July 24, 2006) (brief filed in *Livingston v. Fast Cash USA, Inc.*).

In *Livingston*, our Supreme Court considered whether payday loans were subject to, among other things, the caps on finance charges and APRs placed on all consumer loans. Although acknowledging that the legislature may not have had payday loans in mind when enacting the Indiana Uniform Consumer Credit Code, our Supreme Court concluded that payday loans were "nonetheless subject to and controlled by that statute." 753 N.E.2d at 577.

In response to *Livingston*, in 2002 our General Assembly passed legislation specifically designed for payday lenders. Thus, Indiana Code chapter 24–4.5–7 now regulates "Small Loans," including payday loans. Among other things, finance charges on payday loans are now exempt

from the caps on finance charges and APRs placed on all other consumer loans. Ind.Code § 24–4.5–7–411.[3]

## II. CIF's Argument

CIF argues that the trial court erred in refusing to award statutory attorney fees and treble damages. Specifically, CIF contends that it proved that McCullough committed fraud such that those statutory remedies are warranted.

 As we consider this argument, we observe that judgments in small claims actions are subject to review as prescribed by relevant Indiana rules and statutes. *Counceller v. Ecenbarger, Inc.,* 834 N.E.2d 1018, 1021 (Ind.Ct.App.2005). When reviewing claims tried by the bench without a jury, the reviewing court shall not set aside the judgment unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses. *Id.* In determining whether a judgment is clearly erroneous, we do not reweigh the evidence or determine the credibility of witnesses but consider only the evidence that supports the judgment and the reasonable inferences to be drawn therefrom. *Id.* A deferential standard of review is particularly important in small claims actions, where trials are informal and have the sole objective of dispensing speedy justice between the parties according to the rules of substantive law. *Hill v. Davis,* 832 N.E.2d 544, 548 (Ind.Ct.App.2005).

Earlier this year, a series of opinions were handed down regarding the rights of small loan lenders[4] to recover statutory attorney fees and treble damages. *Nei-* dow v. Cash in a Flash, Inc., 841 N.E.2d 649 (Ind.Ct.App.2006), *trans. denied; Cash in a Flash, Inc. v. Hoffman,* 841 N.E.2d 644 (Ind.Ct.App.2006); *Payday Today, Inc. v. McCullough,* 841 N.E.2d 638 (Ind. Ct.App.2006). Among other things, these cases interpret Indiana Code section 24–4.5–7–409(2), which provides that certain remedies, including treble damages and attorney fees, are recoverable by a payday lender only "when a check or an authorization to debit a borrower's account is used to defraud another person...."

In each of these cases, we held that a small loan lender must prove common law fraud to be entitled to treble damages, attorney fees, or 18% interest on the face amount of the check. *E.g., McCullough,* 841 N.E.2d at 643–44.[5] We also concluded that the small loan lender had not proved fraud based solely upon allegations that the borrower had stopped payment on a check, because there was no evidence that the borrowers had executed their checks "knowing" that they were going to stop payment on them. *Id.* at 642; *see also Neidow,* 841 N.E.2d at 654 (observing that lender failed to prove fraud where only allegation was that borrower had passed a bad check).

Here, CIF argues that the trial court erred in concluding that it failed to prove that McCullough committed fraud on a financial institution. Indiana Code section 35–43–5–8 provides that

(a) A person who knowingly executes, or attempts to execute, a scheme or artifice:

---

3. We are not at liberty to question the policy considerations that led to the legislation.

4. There is no dispute in this case that CIF is a small loan lender.

5. As one exception, we held that if the lender was able to prove fraud on a financial institution pursuant to Indiana Code section 35–43–5–8, it need not also establish the elements of common law fraud to be entitled to the statutory remedies. *Hoffman,* 841 N.E.2d at 648 n. 4.

(1) to defraud a state or federally chartered or federally insured financial institution; or

(2) to obtain any of the money, funds, credits, assets, securities, or other property owned by or under the custody or control of a state or federally chartered or federally insured financial institution by means of false or fraudulent pretenses, representations, or promises;

commits a Class C felony.

■ CIF first argues that establishing constructive fraud is sufficient to prove fraud on a financial institution. Constructive fraud arises by operation of law from a course of conduct, which, if sanctioned by law, would secure an unconscionable advantage, irrespective of the actual intent to defraud. *In re Bender,* 844 N.E.2d 170, 182 (Ind.Ct.App.2006). A plaintiff alleging the existence of constructive fraud has the burden of proving the existence of a duty owing by the party to be charged to the complaining party due to their relationship, and the gaining of an advantage by the party to be charged with fraud. *Id.* Generally, the plaintiff must prove a fiduciary or fiduciary-like relationship to establish constructive fraud. *Id.*

Initially, we note that the statute governing fraud on a financial institution requires that the offender "knowingly . . . execute a scheme or artifice" to defraud a financial institution. I.C. § 35–43–5–8. It is apparent to us that the "knowing" element of this offense requires fraudulent intent on the part of the borrower such that merely proving constructive fraud would be insufficient.

■ Additionally, we observe that " 'the mere existence of a relationship between parties of bank and customer or depositor does not create a special relationship of trust and confidence.' " *Sees v. Bank One,* 839 N.E.2d 154, 164 n. 8 (Ind.2005) (holding that mere fact of bank-customer relationship is insufficient to support a claim of constructive fraud) (quoting *Huntington Mortgage Co. v. DeBrota,* 703 N.E.2d 160, 167 (Ind.Ct.App.1998)). Thus, in a typical payday loan transaction, there is no relationship between the lender and borrower that would sustain a claim of constructive fraud. Such is the case here, and CIF's argument on this basis must fail.

■ CIF next contends that it proved that McCullough committed fraud merely by applying for the loan and then failing to ensure that there were sufficient funds in his account to cover the post-dated check on the day that his payment was due. CIF argues that we can "infer" McCullough's intent from his failure to ensure that there were sufficient funds in his account and from the fact that, after CIF notified McCullough that the check bounced, McCullough only made two "token payments" on a larger balance. Appellant's App. p. 18.

■ Merely alleging that a borrower passed a bad check without proving that he executed the check "knowing" that he would not place sufficient funds in his account to honor the check is insufficient to prove fraud. *See McCullough,* 841 N.E.2d at 642 (holding that lender failed to establish fraud where it failed to prove that borrower executed check knowing that it was going to stop payment). Here, there is no evidence in the record supporting a conclusion that McCullough knew, at the time he executed the check, that he would not place sufficient funds in his account to pay for the loan at the time it came due.[6]

6. CIF makes a thinly-veiled suggestion that in McCullough's loan application, he asserted that he was employed but was actually retired at the time. We observe that the only evi-

Indeed, the only evidence in the record establishes that he intended and hoped to be able to repay the loan but was unable to do so because of mounting medical bills resulting from his wife's terminal cancer. Tr. p. 30; Appellee's Br. p. 3–4. Moreover, McCullough's attempts to arrange a payment plan and the two payments that he made to CIF reflect his good faith and tend to refute any suggestion of fraudulent intent. Thus, the trial court properly concluded that CIF failed to prove that McCullough committed fraud on a financial institution and properly refused to award CIF statutory attorney fees and treble damages.

The judgment of the trial court is affirmed.

SULLIVAN, J., and MAY, J., concur.

dence in the record on this matter is McCullough's assertion at trial that he was an active employee receiving the full salary noted on the application at the time he applied on the loan, tr. p. 11, and McCullough's statement in his appellee's brief that he retired in January 2005, nearly a full year after he applied for the loan, appellee's br. p. 3. Thus, there is no support in the record for CIF's accusation regarding McCullough's employment.