In the Matter of the PATERNITY OF J.A.P., by next friend Sheila A. PUCKETT, Appellant–Petitioner,

v.

Daniel W. JONES, Appellee–Respondent.

No. 43A03–0604–JV–169.

Court of Appeals of Indiana.

Nov. 17, 2006.

Steve Carter, Attorney General of Indiana, Frances Barrow, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellant.

David W. Stone IV, Stone Law Office & Legal Research, Anderson, IN, Joanne M. Kolbe, Warsaw, IN, Attorneys for Appellee.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE

Appellant–Petitioner, J.A.P., by next friend, Sheila Puckett (Puckett), appeals the trial court's Order Determining Pater-

nity and directing Appellee–Respondent, Daniel Jones (Jones), to pay child support to J.A.P.

We reverse and remand with instructions.

### ISSUES

Puckett raises three issues on appeal, which we restate as:

(1) Whether the trial court erred in concluding that Puckett intentionally withheld information from the Title IV–D [1] office that would have helped locate Jones, J.A.P.'s father;

(2) Whether the trial court erred in issuing a Nunc Pro Tunc Order dismissing Puckett's Petition To Determine Paternity and Compel Support under Indiana Trial Rule 41(E); and

(3) Whether the trial court erred in not ordering Jones to pay support to J.A.P. retroactive to 1993, when Puckett filed her Petition to Determine Paternity and Compel Support.

### FACTS AND PROCEDURAL HISTORY

After holding a hearing on January 26, 2006, the trial court entered the following Order Determining Paternity, in pertinent part, on March 20, 2006:

#### FINDINGS

The Court DOES NOW FIND as follows:

1. This action was commenced on August 16, 1993, when [Puckett], as next friend of [J.A.P.], filed a Verified Petition to Determine Paterni-

---

1. "Title IV–D" is a term indicating the agency invoked by Title 42 of the United States Code, Chapter 7 (Social Security), Subchapter IV (Grants to States for Aid and Services to Families With Children and for Child–Welfare Services), Part D (Child Support and Estab-

lishment of Paternity), and is commonly referred to as Title IV–D. *See In re Paternity of S.J.S.*, 818 N.E.2d 104, 107 (Ind.Ct.App.2004). Hereinafter, we refer to such as Title IV–D and the Title IV–D office.

ty and Compel Support [ (the Petition) ].

2. [J.A.P.] was born to [Puckett] on May 1, 1983 out of wedlock.

3. [Puckett] never told [Jones] that she was expecting a child or that she had given birth to a child. [Puckett and Jones] had had one date and one act of sexual intercourse together.

4. At the time of the filing of the [P]etition, [J.A.P.] was in excess of ten (10) years of age.[2]

■ Under Indiana Code § 31–14–5–3, a mother may not file a paternity petition later than two years after the child is born. However, under I.C. § 12–14–2–24, a paternity determination is required when a parent with a dependent child applies for Aid to Families with Dependent Children. When such aid is sought, the Title IV–D office or its agents must file a paternity action under I.C. § 31–14–4–3. *See* I.C. § 12–14–2–24(a)(3).

5. That prior to filing the [P]etition, [Puckett] had submitted a paternity affidavit questionnaire and a Title IV–D parent locator interview form so as to receive state assistance.

6. [Puckett] failed to include on the [P]arent [L]ocator [F]orm any information that may have led to the proper address and whereabouts of [Jones].

7. [Puckett] had information about family and friends of [Jones] at the time she had the IV–D [o]ffice complete the various forms. [Puckett] worked with [Jones'] brother, Richard Jones, at Warsaw Coil; worked with Fred Jones, [Jones'] nephew[,] at Warsaw Coil; had seen [Jones] at Warsaw Coil when [Jones] was doing construction work at Warsaw Coil; and had a common friend with [Jones].

8. In August, 1993, service of summons and copy of [the Petition] was attempted to be served upon [Jones] by the Sheriff of Fulton County at the address given by [Puckett], which process was returned unserved, and no additional service was attempted upon [Jones] until April of 2004.

9. [Jones] possessed a valid driver's license issued by the State of Indiana at all times relevant to this action.

10. [Jones] resided at the same address in Kosciusko County, State of Indiana, since the year 1988.

11. [Jones] was listed in the telephone book since 1998.

12. [Jones] voted ... and was a registered voter in Kosciusko County, State of Indiana, in 1992 or 1996.

13. [Jones] has had the same social security number all of his adult life.

14. After the one failed attempt at service, the Petition to Establish Paternity languished until January 9, 2001, when the [c]ourt *[sua sponte]* [issued] a Trial Rule 41(E) sixty[-]day notice requesting that the parties should show cause why the action should not be dismissed for failure to prosecute.

15. On February 15, 2001, the IV–D [o]ffice, by Deputy Prosecuting Attorney, Daniel Nelson, filed a request with the [c]ourt that the case [be] placed in "off status pending location of [Jones]."

16. On February 15, 2001, at the request of the Kosciusko County Child Support Enforcement Division, the [c]ourt did place the paternity in off status.

17. On April 7, 2004, without motion to the [c]ourt to remove the case from off status, an alias summons was issued and service was effected

upon [Jones] on April 14, 2004 at his residence where he had been located since 1988.

18. On July 19, 2004, genetic testing was completed and the results indicated that there was a 99.927% probability that [Jones] is the father of the child, [J.A.P.].

19. That at the time the alias summons was issued, [J.A.P.] was sixteen (16) days shy of her twenty-first (21st) birthday.

\* \* \*

## CONCLUSIONS

The [c]ourt concludes as follows:

1. [Puckett] had various opportunities to inform [Jones] that he was the father of [J.A.P.], and on multiple times failed to do so, either personally to [Jones] or his relatives or common friends.

2. [Puckett] intentionally withheld information from the IV–D [o]ffice as to the location or means of ascertaining the location of [Jones].

3. [Puckett's] conduct demonstrates that she had no desire to have [Jones'] paternity established and for [Jones] to have any paternal relationship with [J.A.P.].

4. The Kosciusko County Child Support Enforcement Division, under the administration of prior prosecutors, was dilatory and negligent in its duties and failed to comply with Indiana Trial Rules.

5. The commencement of this action should be deemed to have occurred on April 7, 2004, when the Child Support Enforcement Division of the Kosciusko County Prosecuting Attorney's Office re-issued the petition along with an alias summons.

6. The doctrine of fairness does not allow this [c]ourt to require [Jones] to pay support at any time [earlier] than April 7, 2004.

## ORDER

IT IS, THEREFORE, ORDERED, ADJUDGED AND DECREED by the [c]ourt that the Verified Petition to Establish Paternity originally filed on August 16, 1993, is deemed to have been dismissed on February 15, 2001, with the case having been reinstated on April 7, 2004.

... that [Jones] is the father of [J.A.P.] who was born May 1, 1983 to [Puckett].

... that [Jones] shall pay support in the amount of $101.00 each week, commencing Friday, April 9, 2004, and concluding on April 30, 2004, and that [J.A.P.] attained the age of twenty-one (21) years on May 1, 2004.

... that a Nunc Pro Tunc Order shall be deemed to have been entered on February 15, 2001, dismissing the Verified Petition to Establish Paternity pursuant to Trial Rule 41(E).

... that the issuance of the alias summons on April 7, 2004 sufficed as a reinstatement of the action under Trial Rule 41(F).

(Appellant's App. pp. 6–9).

Puckett now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

### I. Standard of Review

Here, the trial court entered findings of fact and conclusions thereon. Accordingly, we apply the following two-tiered standard of review: whether the evidence supports the findings and whether the findings support the judgment. *Payday Today, Inc. v. McCullough*, 841 N.E.2d 638, 642 (Ind.Ct.

App.2006). The trial court's findings and conclusions will be set aside only if they are clearly erroneous, that is, if the record contains no facts or inferences supporting them. *Id.* A judgment is clearly erroneous when a review of the record leaves us with a firm conviction that a mistake has been made. *Id.* We neither reweigh the evidence nor assess the credibility of witnesses, but consider only the evidence most favorable to the judgment. *Id.* We review conclusions of law *de novo. Sullivan Builders & Design, Inc. v. Home Lumber of New Haven, Inc.*, 834 N.E.2d 129, 134 (Ind.Ct.App.2005), *reh'g denied, trans. denied.*

## II. *Puckett's Withholding of Information From the IV–D Office*

■ Puckett first argues that the trial court erred in concluding that she intentionally withheld information from the Title IV–D office that could have led to locating Jones. Puckett also contends that there is no evidence to support the trial court's related conclusion that she had no desire to have Jones' paternity established or for Jones to have any relationship with J.A.P.

The record reveals that at the hearing, Puckett testified that she informed her IV–D case manager that her only knowledge of Jones' whereabouts since their sexual encounter in 1982 was that he briefly worked for Warsaw Coil in the late 1980's; consequently, Puckett advised the case manager to contact Warsaw Coil and request identifying information for Jones, such as a social security number or address. Additionally, Puckett testified her case manager was aware that Puckett had worked with Jones' brother, Richard, at Warsaw Coil; thus, the Title IV–D office could have gathered information about Jones and reached Richard by contacting Warsaw Coil. Even though the trial court found that Puckett also had contact with Jones' nephew, Fred, the record supports a determination that Fred had little to no contact with Jones, and consequently, he would have been of little assistance in finding Jones. Furthermore, even though the trial court found that Puckett could have found Jones' address in the telephone book, the record discloses that Jones himself testified that his address was listed under his wife's maiden name until the mid 1990's. Moreover, as the Petition was instigated by the Title IV–D office and assigned to a specific prosecutor, we find it difficult to understand the trial court's apparent expectation that Puckett locate Jones.

Jones counters the record's scarce evidence supporting the finding that Puckett intentionally hindered investigations by the Title IV–D office and the Child Support Enforcement Division by arguing that the trial court, as the trier of fact, was free to reject Puckett's testimony. Also, as evidence to support the trial court's finding, Jones points to a section of a Parent Locator Form, in which Puckett failed to list the names of any friends or relatives who would know Jones' whereabouts. Due to Puckett's failure to write down the names of Jones' brother or nephew, the trial court concluded, and Jones now proffers, that Puckett intentionally withheld such information. We disagree.

We agree that the trial court was free to accept or reject Puckett's testimony in whole or in part. *See Tebbe v. Tebbe*, 815 N.E.2d 180, 185 (Ind.Ct.App.2004), *reh'g denied, trans. denied.* Nevertheless, our standard of review still requires that the trial court's findings be supported by evidence or reasonable inferences. *See Payday Today, Inc.*, 841 N.E.2d at 642. In our evaluation of the record, we fail to find that the only piece of evidence—the omission on the Parent Locator Form—reason-

ably infers intent by Puckett to prevent the Title IV–D office from finding Jones. Rather, in our perspective, the Parent Locator Form was just one of many forms Puckett was asked to fill out over the years that the Title IV–D office used in an attempt to establish J.A.P.'s paternity. We also note evidence in the record that indicates Puckett completed the Form in conjunction with a meeting with the IV–D case manager, during which more specific information about Jones was discussed. Additionally, our review of the record indicates that Puckett provided other information about Jones on the Parent Locator Form, including a detailed physical description, his last known residence, and the high school he attended. Therefore, we conclude that the trial court's inference that Puckett intentionally hindered the Title IV–D office in its search for Jones was unreasonable and clearly erroneous. *See id.*

### III. *Nunc Pro Tunc Order & Indiana Trial Rule 41(E) Dismissal*

Next, Puckett asserts that as a result of the improper conclusions discussed above, the trial court incorrectly determined that she delayed efforts to locate Jones, and consequently improperly deemed her Petition dismissed on February 15, 2001 under Indiana Trial Rule 41(E) by Nunc Pro Tunc Order. Specifically, Puckett asserts that the use of a nunc pro tunc order was not appropriate because the record does not reveal any desire or intent by the trial court to dismiss the cause in 2001.

### A. *Nunc Pro Tunc Order*

■ Puckett now contests the trial court's Indiana Trial Rule 41(E) dismissal of her Petition for failure to prosecute by Nunc Pro Tunc Order. A nunc pro tunc order is "an entry made now of something which was actually previously done, to have effect as of the former date." *Brimhall v. Brewster*, 835 N.E.2d 593, 597 (Ind.

Ct.App.2005), *reh'g denied, trans. denied* (quoting *Cotton v. State*, 658 N.E.2d 898, 900 (Ind.1995)). A nunc pro tunc entry may be used to either record an act or event not recorded in the court's order book or to change or supplement an entry already recorded in the order book. *Brimhall*, 835 N.E.2d at 597. The purpose of such an order is to correct an omission in the record, which actually occurred, but was omitted by inadvertence or mistake. *Id.* However, the trial court's record must indicate that the unrecorded act or event indeed occurred, and a written memorial must form the basis for establishing the error or omission to be corrected by the nunc pro tunc order. *Id.*

■ To provide a sufficient basis for a nunc pro tunc entry, the supporting written material: (1) must be found in the record; (2) must be required by law to be kept; (3) must show action taken or orders or rulings made by the court; and (4) must exist in the records of the court contemporaneous with or preceding the date of the action described. *Cotton*, 658 N.E.2d at 900. "A nunc pro tunc entry [cannot] be used as the medium whereby a court can change its ruling actually made, however erroneous or under whatever mistakes of law or fact such ruling may have been made." *Brimhall*, 835 N.E.2d at 597 (quoting *Harris v. Tomlinson*, 130 Ind. 426, 30 N.E. 214, 216 (1892)).

In the instant case, the record discloses that on January 9, 2001, the trial court *sua sponte* issued an Indiana Trial Rule 41(E) sixty-day notice requesting that the parties show cause as to why the action should not be dismissed for failure to prosecute. Thereafter, the record evidences a handwritten motion submitted by the State on February 15, 2001, requesting that the trial court place Puckett's case in "off status" pending the location of Jones. (Appellant's

App. p. 15). The trial court apparently complied, as the chronological case summary reflects an entry on March 9, 2001 stating, "This matter is now placed in the off status." (Chronological Case Summary p. 1). However, following this entry, the record is devoid of any procedural developments until the State's filing of an alias summons on April 7, 2004. Therefore, the record does not show that the case was ever actually dismissed, even though it does appear that the State failed to present any reason that would have urged the trial court to refrain from dismissal. Nevertheless, based on the meager record presented to this court, we cannot hold that a nunc pro tunc order dismissing the case was proper. While we do not agree with Puckett that the trial court showed no intent or desire to dismiss her Petition, we agree that the chronological case summary does not sufficiently support the conclusion that the trial court actually dismissed the Petition. Thus, we conclude the trial court erred in entering its Nunc Pro Tunc Order dismissing the Petition in 2001. *See Brimhall,* 835 N.E.2d at 597.

### B. *Indiana Trial Rule 41(E)*

Our conclusion that the nunc pro tunc entry dismissing the Petition was invalid means that, technically, there is no T.R. 41(E) ruling before us to review. *See In re Adoption of R.L.R.,* 784 N.E.2d 964, 968 (Ind.Ct.App.2003). Ordinarily, in such a situation, we would decline to review the substance of the ruling. *Id.* However, here, the absurdity of the delays in prosecuting this case prompt us to acknowledge that a T.R. 41(E) dismissal would have been entirely proper even though the dismissal of paternity actions is not typically encouraged. *See In re Paternity of B.W.M.,* 826 N.E.2d 706, 708 (Ind.Ct.App. 2005), *trans. denied.*

Indiana Trial Rule 41(E) provides, in pertinent part:

> ... when no action has been taken in a civil case for a period of sixty days, the court, ... on its own motion shall order a hearing for the purpose of dismissing such a case. The court shall enter an order of dismissal at plaintiff's cost if the plaintiff shall not show sufficient cause at or before such hearing. Dismissal may be withheld or reinstatement of dismissal may be made subject to the condition that the plaintiff comply with these rules and diligently prosecute the action and upon such terms that the court in its discretion determines to be necessary to assure such diligent prosecution.

The purpose of this rule is "to ensure that plaintiffs will diligently pursue their claims. The rule provides an enforcement mechanism whereby a defendant, or the court, can force a recalcitrant plaintiff to push his case to resolution." *Belcaster v. Miller,* 785 N.E.2d 1164, 1167 (Ind.Ct.App.2003), *trans. denied* (quoting *Benton v. Moore,* 622 N.E.2d 1002, 1006 (Ind.Ct.App.1993), *reh'g denied).* "The burden of moving the litigation is upon the plaintiff, not the court." *Belcaster,* 785 N.E.2d at 1167. "Courts cannot be asked to carry cases on their dockets indefinitely and the rights of the adverse party should also be considered. [The adverse party] should not be left with a lawsuit hanging over his head indefinitely." *Id.* (quoting *Hill v. Duckworth,* 679 N.E.2d 938, 939–40 (Ind.Ct.App.1997)).

In the case before us, the record shows that on September 26, 1991, Puckett applied for public assistance for herself and J.A.P. through the federal Aid to Families with Dependent Children program (AFDC). As a result, the Title IV–D office was required to initiate proceedings to

determine J.A.P.'s paternity.[2]  *See* I.C. § 12–14–2–24.  Accordingly, on October 30, 1991, Puckett submitted a Paternity Affidavit and completed a Paternity Questionnaire, naming Jones as J.A.P.'s father on both forms.  Nearly two years later, on August 16, 1993, the Petition to determine J.A.P.'s paternity was actually filed, and a summons was issued to Jones at his last known address, but service of process was unsuccessful.  Then, between August of 1993 and April of 2004, we find no evidence of any activity on the case other than the State's request to put the case in "off status" in 2001 following the trial court's T.R. 41(E) motion.  (Appellant's App. p. 15).

■  When we review a trial court's decision to dismiss a case for failure to prosecute, we balance several factors, including the length of the delay, the reason for the delay, and the degree of personal responsibility on the part of the plaintiff.  *Belcaster*, 785 N.E.2d at 1167.  In assessing the length of a delay, we have upheld T.R. 41(E) dismissals when such a period of inactivity has been ten months; thus, the failure to prosecute a matter for more than ten years, the length of inactivity in the present case, is egregious.  *See id.* at 1168.  It is especially inexcusable in light of the AFDC's inclusion of the Federal Parent Locator Service, an organization whose duty, in part, is to obtain and transmit information facilitating the discovery of any individual against whom child support is sought.  *See* 42 U.S.C. § 653; *In re Paternity of S.J.S.*, 818 N.E.2d 104, 107 (Ind.Ct.App.2004).  Therefore, it is impossible to disagree with the trial court's conclusion that all of the agencies involved were negligent in pursuing this case.  Nevertheless, as we previously determined, the record does not support the issuance of the trial court's Nunc Pro Tunc Order dismissing the Petition.  As a result, we reverse the trial court's T.R. 41(E) dismissal, although we acknowledge that the facts of this case would ordinarily constitute an affirmation of a T.R. 41(E) dismissal.

## IV.  *Retroactivity of Child Support Order*

■  Finally, Puckett argues that once the trial court established J.A.P.'s paternity, it was required to order child support retroactive to August 16, 1993, the date the Petition was filed.  Thus, Puckett contends the trial court erred in concluding that the doctrine of fairness did not allow it to require Jones to pay support any earlier than April 7, 2004, the date the alias summons was served.

I.C. § 31–14–11–5, the statute controlling retroactive child support, provides:

> The support order:
>
> (1) may include the period dating from the birth of the child; and
>
> (2) *must* include the period dating from the filing of the paternity action.

(emphasis added).  Here, because the trial court deemed the Petition dismissed in 2001 by Nunc Pro Tunc Order, it concluded that Jones should only have to pay child support retroactive to April 7, 2004, when the Petition was "reinstated" by the completion of service of process upon Jones.  However, now that we have determined that the trial court's nunc pro tunc dismissal of the Petition was improper, the statute would seem to mandate that Jones pay child support retroactive to August 16, 1993, when the Petition was originally filed.  *See* I.C. § 31–14–11–5.

2.  The record reveals that Puckett also applied for assistance in 1987, but nothing was done at that time to initiate the establishment of J.A.P.'s paternity.

Yet, in addition to determining that the commencement of the action should be deemed to have occurred on April 7, 2004, the trial court stated, "[t]he doctrine of fairness does not allow this [c]ourt to require [Jones] to pay support at any time [earlier] than April 7, 2004." (Appellant's App. p. 9). In response to this conclusion, Puckett argues that the trial court's reliance on the "doctrine of fairness" is actually an improper application of the doctrine of laches. Laches is an equitable defense that may be raised to stop a person from asserting a claim that he would normally be entitled to assert. *Indiana Real Estate Com'n v. Ackman*, 766 N.E.2d 1269, 1273 (Ind.Ct.App.2002). The doctrine's rationale is that a person who, for an unreasonable length of time, has neglected to assert a claim against another waives the right to assert his claim when the delay prejudices the person against whom he would assert it. *Id.* Laches is comprised of three elements: inexcusable delay in asserting a right; an implied waiver arising from knowing acquiescence in existing conditions; and, a change in circumstances causing prejudice to the adverse party. *Shriner v. Sheehan*, 773 N.E.2d 833, 846 (Ind.Ct.App.2002), *trans. denied.*

However, in the case before us—despite the inexcusable delay in establishing J.A.P.'s paternity, the apparent acquiescence by Puckett to the status quo, and the undoubted prejudice to Jones—this court has held that "the doctrine of laches simply does not apply to child support cases." *Trent v. Trent*, 829 N.E.2d 81, 87 (Ind.Ct. App.2005) (quoting *Knaus v. York*, 586 N.E.2d 909, 914 (Ind.Ct.App.1992)). We have refused to apply laches in such proceedings because we will not penalize a child for his or her parent's delay in pursuing child support. *Id.* Thus, in the instant case, it would not be appropriate to apply the doctrine of laches; and, we agree with

Puckett that by applying the "doctrine of fairness," the trial court was in essence applying the doctrine of laches. Of course, here, we also note that the blame for the delay in establishing J.A.P.'s paternity cannot be placed wholly on Puckett. It was not Puckett's obligation to serve Jones with the Petition. Rather, as the trial court even found, the local Child Support Enforcement Division was negligent, or grossly and inexcusably negligent by our evaluation, in its duties and lack of compliance with Indiana Trial Rules. Therefore, we find it necessary to state that just as a child should not be punished for a parent's delay in seeking support, a child should not be punished for the State's delay in prosecuting a paternity suit.

Nonetheless, Jones asserts that an order of any additional retroactive support to J.A.P. would benefit no one. First, Jones contends that the payment of back support would not benefit J.A.P. because she is now an emancipated adult. We disagree. Our review of the record shows that J.A.P. has accumulated debt from attending two years of college, and in fact, withdrew from college in order to prevent her debt from increasing. Thus, we conclude that additional support would clearly be of use to J.A.P., either to pay off her debt or to re-enroll in college courses. Furthermore, this court has held that it is in the best interests of all citizens of Indiana that parents meet their obligations to support their children, and a parent who has not supported a child has an obligation that remains unfulfilled regardless of emancipation. In re *Paternity of L.A. ex rel. Eppinger*, 803 N.E.2d 1196, 1201 (Ind. Ct.App.2004), *trans. denied.*

Jones' next argument is that additional retroactive support would inappropriately reward Puckett for delaying the establishment of J.A.P.'s paternity. Again, we dis-

agree. J.A.P. is twenty-three years old, and any monies paid to her as a result of this paternity action would be given directly to her; therefore, Puckett would not be entrusted with or "rewarded" by the payments.

 Finally, Jones contends that any additional retroactive child support would have to be offset by the amount of welfare benefits paid to Puckett as a result of her enrollment in ADFC, and thus again there would be no benefit to J.A.P. We agree, in part, as a determination of additional back-support will require compliance with 42 U.S.C. § 657, which outlines the protocol for the payment of support arrearages[3] when a family has previously been given state or federal assistance. However, we disagree that the end result of this computation will not benefit J.A.P. 42 U.S.C. § 657 clearly states that "in no event shall the total of the amounts [of arrearage] paid to Federal Government and retained by the State exceed the total of the amounts that have been paid to the family as assistance by the State." Thus, because (1) the amount of additional retroactive child support may be greater than the amount of assistance previously provided by the State, and (2) the record before us discloses that Puckett and J.A.P. only intermittently received assistance from the State, we conclude that J.A.P. is likely to benefit from retroactive child support payments. Therefore, while a calculation of the offset required under 42 U.S.C. § 657 may be a tedious and unwelcome task, we ultimately conclude that J.A.P. is entitled to child support payments dating from the filing of the Petition in 1993.

## CONCLUSION

Based on the foregoing, we conclude: (1) the trial court's finding that Puckett inten-

tionally withheld information from the IV–D office is clearly erroneous; (2) the trial court's entry of a Nunc Pro Tunc Order dismissing the Petition is improper; and (3) the trial court erred in its conclusion that the Petition was reinstated in 2004, and consequently erred in failing to order retroactive child support for J.A.P. to August 16, 1993, the date the Petition was filed.

Reversed and remanded, with instructions to recalculate the amount of retroactive child support owed to J.A.P.

BAILEY, J., and MAY, J., concur.

---

**3.** While we recognize that "retroactive" support and an "arrearage" are not synonymous terms, for public policy reasons, we conclude that the retroactive support payments at issue here should be treated as an arrearage in relation to 42 U.S.C. § 657.